MICHAEL J. GABLEMAN, J.
¶ 1. This is a review of a published decision of the court of appeals, which affirmed in part and reversed in part the Milwaukee County Circuit Court's[1] grant of summary judgment in favor of the Milwaukee Police Association ("Police Association") and the Milwaukee Professional Fire Fighters Association Local 215 ("Fire Fighters Association"). Black v. City of Milwaukee, 2015 WI App 60, 364 Wis. 2d 626, 869 N.W.2d 522.
f 2. This case requires us to interpret and apply Article XI, § 3(1) of the Wisconsin Constitution, better known as the home rule amendment. "Adopted in 1924, the home rule amendment was intended to provide cities and villages with greater autonomy over local affairs," while still retaining the Legislature's power to legislate. Madison Teachers, Inc. v. Walker, 2014 WI 99, ¶ 89, 358 Wis. 2d 1, 851 N.W.2d 337 (footnotes omitted). Accordingly, the home rule amendment gives cities and villages the ability "to determine their local affairs and government, subject only to this constitution and to such enactments of the legislature of statewide concern as with uniformity shall affect every city or every village."[2] Wis. Const, art. XI, § 3(1). In other words, a city or village *280 may, under its home rule authority, create a law that deals with its local affairs, but the Legislature has the power to statutorily override the city's or village's law if the state statute touches upon a matter of statewide concern or if the state statute uniformly affects every city or village. See Madison Teachers, 358 Wis. 2d 1, ¶ 101.
¶ 3. In the present case, we interpret and apply the home rule amendment to determine whether a section in the City of Milwaukee's ("the City" or "Milwaukee") charter can trump a statute enacted by the Legislature. Since 1938, Milwaukee has required its city employees to comply with a residency requirement or face termination of their employment. Its residency requirement is set forth in section 5-02 of the City's charter. Put simply, it requires city employees to reside within city limits. In 2013, the Legislature enacted Wis. Stat. § 66.0502 (2013-14).[3] Simply stated, Wis. Stat. § 66.0502 prohibits cities, villages, towns, counties, and school districts[4] from requiring their employees to reside within their jurisdictional limits. It is obvious the charter and the statute conflict: one imposes a residency requirement and one bans residency requirements. Despite enactment of *281 Wis. Stat. § 66.0502, the City has continued to enforce its residency requirement.[5]
¶ 4. The City claims that it can continue to enforce its residency requirement pursuant to its home rule authority under Article XI, § 3(1) of the Wisconsin Constitution. The City contends that its residency requirement (contained in section 5-02 of its charter) involves a matter of "local affairs" because (1) the City has an interest in maintaining a tax base from which to draw revenue; (2) the City has an interest in its employees sharing a common community investment as Milwaukee residents; and (3) the City has an interest in efficiently delivering city services. Moreover, the City argues that Wis. Stat. § 66.0502 cannot trump section 5-02 because it does not with uniformity affect every city or every village. It believes that "uniformity" must be understood as "actually affecting all municipalities in equal measure uniformly." According to the City, Wis. Stat. § 66.0502 fails to satisfy the home rule amendment's uniformity requirement because it does not impact all cities or villages in equal measure.
¶ 5. In contrast, the Police Association claims that the City can no longer enforce its residency requirement because Wis. Stat. § 66.0502 trumps section 5-02 of the City's charter. The Police Association contends, in relevant part, that residency requirements constitute a matter primarily of statewide concern because (1) when the Legislature enacted Wis. Stat. § 66.0502, it found that "public employee residency requirements are a matter of statewide con *282 cern;" and (2) the Legislature may legislate on matters that concern public health, safety, and welfare, and here, it is reasonable to presume that the Legislature determined that residency requirements negatively impact the welfare of public employees. Additionally, the Police Association argues that Wis. Stat. § 66.0502 trumps section 5-02 of the City's charter because Wis. Stat. § 66.0502 with uniformity affects every city or village. Unlike the City, it believes that "uniformity" must be understood as requiring "facial uniformity." According to the Police Association, Wis. Stat. § 66.0502 is facially uniform because, by its terms, it applies to all cities, villages, towns, counties, and school districts. Finally, the Police Association seeks relief and damages under 42 U.S.C. § 1983. It claims that the City unconstitutionally deprived it of its "liberty interest in being free from 'residency' being required as a condition of municipal employment" when the City continued enforcement of its residency requirement after the Legislature enacted Wis. Stat. § 66.0502.
¶ 6. This case presents two issues for our review. The first is whether Wis. Stat. § 66.0502 precludes the City from enforcing its residency requirement. The second is whether the Police Association is entitled to relief and damages under 42 U.S.C. § 1983.
¶ 7. As to the first issue, we hold that Wis. Stat. § 66.0502 precludes the City from enforcing its residency requirement. The Legislature has the power to legislate on matters of local affairs when its enactment uniformly affects every city or every village, notwithstanding the home rule amendment. For purposes of the home rule amendment, an enactment is uniform when it is facially uniform. Wisconsin Stat. § 66.0502 is facially uniform because it applies to "any city, *283 village, town, county, or school district." Wis. Stat. § 66.0502 (2) (emphasis added). Because Wis. Stat. § 66.0502 uniformly affects every city or village, it trumps section 5-02 of the City's charter. As a result, Milwaukee may no longer enforce its residency requirement.
¶ 8. As to the second issue, we hold that the Police Association is not entitled to relief or damages under 42 U.S.C. § 1983. Its section 1983 claim fails because the Police Association has not met the requirements necessary to prevail on a section 1983 claim. Specifically, the Police Association has not shown a deprivation of rights, privileges, or immunities protected by the Constitution or the laws of the United States.[6]
I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY
¶ 9. For many years, Milwaukee[7] has required its city employees to reside within city limits as a condition of employment. Moreover, it has mandated *284 discharge for any employee caught living outside its city limits. Section 5-02 of the City charter contains Milwaukee's residency rule:
1. RESIDENCY REQUIRED. All employees of the city of Milwaukee are required to establish and maintain their actual bona fide residence within the boundaries of the city. Any employe [e] who does not reside within the city shall be ineligible for employment by the city and his employment shall be terminated in a manner hereinafter set forth.
¶ 10. On June 20, 2013, the Legislature enacted 2013 Wisconsin Act 20 ("Act 20" ).[8] Section 1270 of Act 20 created Wis. Stat. § 66.0502, which prohibits any city, village, county, or school district from requiring an employee to live within a jurisdictional limit. Specifically, it states,
(1) The legislature finds that public employee residency requirements are a matter of statewide concern.
(2) In this section, "local governmental unit" means any city, village, town, county, or school district.
(3)(a) Except as provided in sub. (4), no local governmental unit may require, as a condition of employment, that any employee or prospective employee reside within any jurisdictional unit.
(b) If a local governmental unit has a residency requirement in effect on July 2, 2013, the residency requirement does not apply and may not be enforced.[9]
Wis. Stat. § 66.0502(l)-(3)(b).
*285 f 11. On the day Act 20 took effect, the City's Common Council passed a resolution titled, "Substitute resolution directing all City officials to continue enforcement of s. 5-02 of the Milwaukee City charter relating to residency." It states, in pertinent part,
This resolution directs all City officials to continue enforcement of s. 5-02 of the Milwaukee City Charter relating to residency of City employees. The Common Council finds that legislative action, and specifically the enactment of 2013 Wisconsin Act 20, s. 1270, violates the City's constitutional home rule authority under Article XI, Section 3(1), of the Wisconsin State Constitution. Section 1270 purports to prohibit most municipal laws requiring employee residency including provisions of the Milwaukee City Charter.
The Common Council further finds that acquiescence to this unconstitutional exercise of state authority would significantly harm the interests of the City and its residents.
*286 [] The issue of local residency is not a matter of state-wide concern but is instead clearly a matter of "local affairs and government" to be determined by local governments that are directly accountable to local voters; and
0 In 1938, as an exercise of its Constitutional Home Rule authority, the City of Milwaukee enacted a charter ordinance, now City Charter s. 5-02, requiring that all employees reside within the boundaries of the City....
Furthermore, the resolution listed justifications for the Common Council's decision to pass the resolution, such as (1) "the need to ensure that sufficient staff are able to respond in a timely manner to" emergencies; (2) the need to "minimize[] the City's response time;" (3) the need for city employees to "contribut[e] to the City's economy; (4) and the desire for city employees to have "better knowledge of neighborhoods and enhanced relationships with residents."
¶ 12. The City's Mayor signed the resolution on the same day the Common Council passed it. In addition, the Mayor publicly announced that the City would terminate the employment of any employee found to be in violation of its residency requirement.
¶ 13. On July 10, 2013, the Police Association[10] filed suit against the City in Milwaukee County Circuit Court. The Police Association sought a declaratory *287 judgment, pursuant to Wis. Stat. § 806.04,[11] in order to determine the rights and obligations of the parties under Wis. Stat. § 66.0502, as well as a declaration that the City had violated Wis. Stat. § 66.0502.[12] Additionally, the Police Association asked for relief and damages under 42 U.S.C. § 1983. It claimed that it was entitled to relief under section 1983 because the City violated its liberty interest to be free from residency requirements as a condition of employment when its Common Council passed, and the Mayor signed, the resolution.
¶ 14. Some time later, the Fire Fighters Association intervened in the action. It sought an "adjudication of the constitutionality and enforceability of §66.0502 of Wisconsin Statutes," and "a permanent injunction enjoining the City of Milwaukee from enforcing any ordinances, resolutions, policies, orders, or directives in any form, in contravention of the rights of the members of Local 215 under § 66.0502 of the Wisconsin Statutes."[13] All parties moved for summary judgment.
*288 ¶ 15. On January 27, 2014, the circuit court held a hearing on the parties' motions for summary judgment. That same day, the court issued a decision and order. Regarding the home rule amendment, the circuit court succinctly stated its findings in its concluding paragraph:
This Court finds that Wis. Stat. § 66.0502 deals with a matter primarily of statewide concern and applies uniformly to all local government units in this state. The enactment of Wis. Stat. § 66.0502 withdrew from local governments the power to regulate the matter of residency requirements for municipal employees, and thereby removed the issue of residency from the scope of home rule authority under art. XI, sec. 3(1), Wis. Const. Consequently, the home rule amendment does not authorize the City to continue regulating residency requirements by enforcing an ordinance which is directly contrary to the legislative mandates of Wis. Stat. § 66.0502. The City's residency ordinance and related [resolution] are unenforceable to the extent that they fail to comply with the legislative mandates of Wis. Stat. § 66.0502.
Regarding the Police Association's section 1983 claim for damages, the circuit court concluded that "Wis. Stat. § 66.0502 creates a liberty interest in freedom from residency requirements as a condition of municipal employment, except as provided by the statute." But the court did not award damages because "the City's actions thus far have not deprived any part of the liberty interest created by Wis. Stat. § 66.0502."
¶ 16. The City appealed, and the Police Association[14] cross-appealed. The court of appeals affirmed in part and reversed in part the circuit court's grant of *289 summary judgment. Black v. City of Milwaukee, 2015 WI App 60, ¶ 3, 364 Wis. 2d 626, 869 N.W.2d 522. With respect to the section 1983 claim, the court of appeals affirmed the circuit court's decision not to award relief or damages under section 1983. Id,., ¶ 3. It did so on the grounds that Wis. Stat. § 66.0502 "did not create a protectable liberty interest." Id., ¶ 35. With respect to the home rule amendment, the court of appeals concluded, "because Wis. Stat. § 66.0502 does not involve a matter of statewide concern and does not affect all local government units uniformly, it does not trump the Milwaukee ordinance." Id., ¶ 3 (emphasis omitted).
¶ 17. In reaching its conclusion on the home rule amendment, the court of appeals expressed deep concern over the disproportionate "impact" it believed Wis. Stat. § 66.0502 could have on the City. See id., ¶¶ 5-8, 20-29, 33; see also id., ¶¶ 36-37 (Kessler, J., concurring). As a consequence of that concern, it determined that Wis. Stat. § 66.0502 primarily addressed a matter of local affairs and did not impact every city or village equally. To support its conclusions, the court of appeals relied on the Legislative Fiscal Bureau's Paper (#554), titled "Local Government and Employee Residency Requirements." According to the court of appeals, Paper #554 hypothesized that elimination of such requirements might adversely impact Milwaukee's "levels of employment, incomes, and home values in certain neighborhoods." Id. ¶ 6 (majority opinion).
¶ 18. Further, the court of appeals feared that Milwaukee might become the next Detroit: "Significantly, . . . the Legislative Fiscal Bureau paper's analysis warns that abolishing residency requirements could result in Milwaukee's suffering the same economic decline recently experienced by the city of *290 Detroit," and "The report surmised that Milwaukee could face the same fate as [Detroit], despite arguments to the contrary . . . Id., ¶ 7. The court of appeals felt so strongly about the impact Wis. Stat. § 66.0502 might have on the City, it went so far as to state, "Regardless of what the statute's language says, the facts in the record make clear that only one city — Milwaukee—will be deeply and broadly affected." Id., ¶ 33 (emphasis added); see also id., ¶ 21 ("The facts in the record, exemplified by the Legislative Fiscal Bureau's paper, make clear that the goal of Wis. Stat. § 66.0502 was to target the City of Milwaukee." (emphasis added)). Consequently, the court of appeals ruled that section 5-02 of the City's ordinance was "still good law." Id., ¶ 35.
¶ 19. The Police Association petitioned this court for review. We granted the petition on November 4, 2015.
II. STANDARD OF REVIEW
¶ 20. This case comes before the court as an action for declaratory judgment and on cross-motions for summary judgment. "When a circuit court's ruling on motions for declaratory judgment depends on a question of law, we review the ruling de novo." Gister v. Am. Family Mut. Ins. Co., 2012 WI 86, ¶ 8, 342 Wis. 2d 496, 818 N.W.2d 880. "We review the partial grant of summary judgment independently, applying the same methodology as the circuit court." In re Brianca M.W., 2007 WI 30, ¶ 8, 299 Wis. 2d 637, 728 N.W.2d 652. "Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Id.
*291 ¶ 21. In this case, we must also interpret a provision of the Wisconsin Constitution as well as a state statute. "The interpretation of a constitutional provision is a question of law that we review de novo." Appling v. Walker, 2014 WI 96, ¶ 17, 358 Wis. 2d 132, 853 N.W.2d 888. "The interpretation and application of a statute present questions of law that this court reviews de novo while benefitting from the analyses of the court of appeals and circuit court." In re Commitment of Alger, 2015 WI 3, ¶ 21, 360 Wis. 2d 193, 858 N.W.2d 346.
III. DISCUSSION
f 22. We first discuss whether Wis. Stat. § 66.0502 precludes the City from enforcing its residency requirement. We then consider whether the Police Association is entitled to relief and damages under 42 U.S.C. § 1983.
A. WHETHER WIS. STAT. 13 66.0502 PRECLUDES THE CITY FROM ENFORCING ITS RESIDENCY REQUIREMENT
¶ 23. "The legislative power in this state is lodged in the legislature. When it exerts that power, it exerts it on behalf of and in the name of the people of the State of Wisconsin." Van Gilder v. City of Madison, 222 Wis. 58, 67, 267 N.W. 25 (1936). Conversely, "cities are creatures of the state legislature [that] have no inherent right of self-government beyond the powers expressly granted to them." Madison Teachers, 358 Wis. 2d 1, ¶ 89 (citing Van Gilder, 222 Wis. at 72-73 (citing City of Trenton v. New Jersey, 262 U.S. 182, 187 *292 (1923) ("A municipality is merely a department of the state, and the state may withhold, grant, or withdraw power and privileges as it sees fit. However great or small, its sphere of action, it remains the creature of the state exercising and holding powers and privileges subject to the sovereign will."))).
¶ 24. Adopted in 1924, the "recognized purpose" of the home rule amendment "was to confer upon cities and villages a measure of self-government not theretofore possessed." State ex rel. v. Baxter, 195 Wis. 437, 445, 219 N.W. 858 (1928) ("Baxter"). Correspondingly, the home rule amendment permits "cities and villages to determine their local affairs and government, subject only to this constitution and to such enactments of the legislature of statewide concern as with uniformity shall affect every city or every village."[15] Wis. Const, art. XI, § 3(1).
¶ 25. Two years ago, we clarified the relevant analytical framework for the home rule amendment:
[O]ur home rule case law instructs us that, when reviewing a legislative enactment under the home rule *293 amendment, we apply a two-step analysis. First, as a threshold matter, the court determines whether the statute concerns a matter of primarily statewide or primarily local concern. If the statute concerns a matter of primarily statewide interest, the home rule amendment is not implicated and our analysis ends. If, however, the statute concerns a matter of primarily local affairs, the reviewing court then examines whether the statute satisfies the uniformity requirement. If the statute does not, it violates the home rule amendment.
Madison Teachers, 358 Wis. 2d 1, ¶ 101.
¶ 26. The City takes issue with our recent interpretation of the home rule amendment. It believes that pursuant to the home rule amendment, a legislative enactment can trump a city charter ordinance only when the enactment both (1) addresses a matter of statewide concern, and (2) with uniformity affects every city or village. In contrast, we have held that a legislative enactment can trump a city charter ordinance either (1) when the enactment addresses a matter of statewide concern, or (2) when the enactment with uniformity affects every city or village. See id., ¶ 99.
¶ 27. We reached our determination after analyzing and applying firmly-rooted and long-established Wisconsin Supreme Court precedent. See id., f 105 (highlighting "this court's long-held rule that when a charter ordinance of a home rule city concerns a matter of local affairs, conflicting legislation must be uniformly applied statewide to satisfy the home rule amendment"); id., ¶ 109 n.32 (surveying the "ample scholarship on the topic of state constitutional home rule," and concluding that it aligned with this court's interpretation of the home rule amendment); State ex rel. Harbach v. City of Milwaukee, 189 Wis. 84, 86, 206 *294 N.W.2d 210 (1925)[16] ("Harbach") ("It is obvious that the limitation placed upon the power of the legislature with reference to laws which 'shall with uniformity affect every city or every village' is confined to the 'local affairs and government' of cities and villages. With reference to all subjects that do not constitute 'local affairs,' or relate to the government of cities and villages, the legislature has the same power of classification that it had before the adoption of the home-rule amendment." (emphasis added)); Baxter, 195 Wis. at 449[17] ("The power of the legislature to legislate in the future as it has in the past has not been limited. But where the legislation of a city enacted within the scope of its home-rule powers comes in conflict with state legislation, the legislation of the city prevails over the state legislation, unless the state legislation *295 affects uniformly every city. . . Van Gilder, 222 Wis. at 84 ("When the legislature deals with local affairs and government of a city, if its act is not to be subordinate to a charter ordinance, the act must be one which affects with uniformity every city. ... [In contrast,] [w]hen the legislature deals with matters which are primarily matters of state-wide concern, it may deal with them free from any restriction contained in the home-rule amendment. The home-rule amendment did not withdraw from the legislature its power to deal with matters primarily of state-wide concern which it possessed before the adoption of the amendment."); Thompson v. Kenosha Cty., 64 Wis. 2d 673, 686, 221 N.W. 845 (1974) (" [A]s this court held in Van Gilder v. Madison and affirmed in West Allis v. Milwaukee County, this uniformity limitation applies only if the subject of the statute concerns primarily local affairs. If the subject of the legislation is of statewide concern, the uniformity restriction is inapplicable." (footnotes omitted)); State ex rel. Michalek v. LeGrand, 77 Wis. 2d 520, 530 n.16, 253 N.W.2d 505 (1977) ("Michalek") (noting that the home rule amendment limits the legislature only in the "field of local affairs of cities and villages;" thus, the home rule amendment does not limit the legislature in the field of statewide affairs (emphasis added)). Adoption of the City's argument would require us to overturn precedent from this court dating back to 1925. We see no reason to toss out nearly a century's worth of precedent, and so we proceed under the framework set forth in Harbach, Baxter, Van Gilder, Thompson, Michalek, and Madison Teachers.[18]
*298 1. Whether Residency Requirements Are Primarily Of Statewide Concern Or Are Primarily Of Local Concern
¶ 28. We have long recognized "that the terms 'local affairs' and 'statewide concern' in the home rule amendment are problematically vague." Id., ¶ 113 (citing Van Gilder, 222 Wis. at 73). "Further, the terms 'local affairs' and 'statewide concern' carry the risk of oversimplifying reality [because] the 'functions of state and local governments necessarily overlap,' and moreover, the nature of government functions can change over time." Id. (citation omitted) (citing Van Gilder, 222 Wis. at 64). As a result, "home rule challenges are, by necessity, fact-specific inquiries, and determinations are made on an ad hoc basis." Id.
¶ 29. As part of our statewide or local concern analysis, "we have outlined three areas of legislative enactment: those that are (1) exclusively a statewide concern; (2) exclusively a local concern; or (3) a 'mixed bag.' " Id., ¶ 96; see also Michalek, 77 Wis. 2d at 526-28. If a legislative enactment concerns a policy matter that is exclusively of statewide concern, then the home rule amendment grants no city or village the authority to regulate the matter. Madison Teachers, 358 Wis. 2d 1, ¶ 97; see also Van Gilder, 222 Wis. at 84 ("When the legislature deals with matters which are primarily matters of state-wide concern, it may deal with them free from any restriction contained in the *299 home-rule amendment."). In contrast, if a legislative enactment concerns a policy matter of "purely local affairs," then "home rule municipalities may regulate those local matters and, under the home rule amendment, state legislation that would preempt or make that municipal regulation unlawful, unless uniformly applied statewide, is prohibited." Madison Teachers, 358 Wis. 2d 1, ¶ 98 (citing Michalek, 77 Wis. 2d at 529). Finally, if a "legislative enactment touches on an issue that concerns both statewide and local government interests (a 'mixed bag')," then a court must determine whether the matter is "primarily" or "para-mountly" a matter of statewide or local concern. Id., ¶ 100 (citing Michalek, 77 Wis. 2d at 528).
¶ 30. Here, the Legislature specially included a public policy statement in Wis. Stat. § 66.0502: "The legislature finds that public employee residency requirements are a matter of statewide concern." Wis. Stat. § 66.0502(l)qww . This court has previously held that legislative determinations regarding whether a policy matter constitutes a "statewide concern" or a matter of "local affairs," are "entitled to great weight." Madison Teachers, 358 Wis. 2d 1, ¶ 125 (citing Van Gilder, 222 Wis. at 73-74 (noting that "[e]ven though the determination made [by the Legislature] should be held not to be absolutely controlling, nevertheless, it is entitled to great weight")). Deference is proper because "matters of public policy are primarily for the legislature." Van Gilder, 222 Wis. at 73-74;[19] see also Flynn v. *300 Dep't of Admin., 216 Wis. 2d 521, ¶ 24, 576 N.W.2d 245 (1988) ("This court has long held that it is the province of the legislature, not the court, to determine public policy" because as the "voice of the people," " [i]t is the best judge of what is necessary to meet the needs of the public . . . ."). While we give deference to a Legislature's determination, the ultimate decision "whether a legislative enactment is primarily a matter of local or statewide concern rests with this court and not the legislature." Madison Teachers, 359 Wis. 2d 1, ¶ 128.[20]
*301 ¶ 31. In this case, we are being asked to weigh a statewide policy-based concern against a local economic interest. On the one hand, the Legislature, through its enactment of Wis. Stat. § 66.0502, has determined that public employees should have the right to choose where they wish to live. On the other hand, the City has asserted an interest in maintaining its residency requirement in order to protect its tax base, its interest in its employees sharing a common community investment as city residents, and its interest in its efficient delivery of services.[21]
f 32. Given the competing interests outlined above, we conclude that Wis. Stat. § 66.0502 constitutes a "mixed bag" because it concerns both statewide and local interests. At this point, we would ordinarily proceed to apply the test of paramountcy to determine whether the legislative enactment is "primarily" or "paramountly" a matter of local affairs or a matter of statewide concern. However, in this case, we do not *302 apply the test of paramountcy to determine which interest (state or local) is paramount. Instead, we give the City the benefit of the doubt: we assume, without deciding, that Wis. Stat. § 66.0502 is a matter of local affairs. Accordingly, we move on to consider the second step in the home rule analysis — whether Wis. Stat. § 66.0502 uniformly affects every city or village.
2. Whether Wis. Stat. § 66.0502 With Uniformity Affects Every City Or Village
¶ 33. We are instructed by our determination in Madison Teachers that if the statute concerns a matter of primarily local affairs, the reviewing court then examines whether the statute "with uniformity" "affects" "every city or every village." See 358 Wis. 2d 1, ¶ 101. This is not the first time we have examined the home rule amendment's uniformity requirement. We addressed the home rule amendment's uniformity requirement in Thompson v. Kenosha County, 64 Wis. 2d 673, 221 N.W.2d 845 (1974), and Van Gilder v. City of Madison, 222 Wis. 58, 267 N.W. 25 (1936). Both of these cases are constitutional home rule cases, interpreting and applying the same amendment we are currently interpreting and applying: Article XI, § 3(1) of the Wisconsin Constitution. With this precedent as our guide, we turn to the question of whether Wis. Stat. § 66.0502 affects with uniformity every city or village.
¶ 34. In Thompson, the Legislature passed Wis. Stat. § 70.99, which allowed any Wisconsin county to establish a county assessor system. 64 Wis. 2d at 676. The plaintiffs argued that Wis. Stat. § 70.99 violated the home rule amendment. Under the statute, if a county chose to establish a county assessor system, then the office of assessor in all cities, villages, and *303 towns within the county was eliminated. Id. Kenosha County chose to adopt a county assessor system; thus, the office of assessor was eliminated in all cities, villages, and towns within Kenosha County. Relying on the home rule amendment, the plaintiffs argued that Wis. Stat. § 70.99 did not uniformly affect all cities and villages because the cities and villages in Kenosha County had no office of assessor, while cities and villages located in counties that chose to forego adoption of a county assessor system had an office of assessor. Id. at 683. This court dismissed their argument, commenting,
Sec. 70.99 is, on its face, uniformly applicable throughout the state. The legislature did not enact a statute which could only apply to Kenosha county, or as is often the case, Milwaukee county. Each county in the state has an equal right to decide to adopt a countywide assessor system. . . . Where a statute confers equal legal powers, that would seem sufficient to satisfy the uniformity requirement. Thus, for example, two cities may have identical powers, yet the respective city councils may enact entirely different sets of ordinances. The state could hardly be held to have violated the uniformity requirement in such a situation.
Id. at 687 (emphasis added). In short, since 1974 we have held that a statute satisfies the home rule amendment's uniformity requirement if it is, on its face, uniformly applicable to every city or village. Id.
¶ 35. We also considered the uniformity requirement in Van Gilder. There, we expressed skepticism toward the notion that a law could have a uniform impact on every city or village:
Was it the intention of the people that the legislature should be without power to enact any law affecting a city of 2,500 people unless that law at the same time *304 affected in the same way the City of Milwaukee, a metropolitan community having few if any interests akin to those of a small city of the fourth class? What was meant by uniformity? Was the law to be uniform in its application to the city ofXwith 2,500population and affect it in the same way it affects the city of Milwaukee, a metropolitan community having a population of 600,000? In that sense there could hardly be a law affecting with uniformity every city. A law uniform in its application might work out one way in one city and in another way in another city depending upon the local situation and the way in which it was in fact administered and so "affect" them differently.
Van Gilder, 222 Wis. at 67 (emphasis added). We ultimately held, "[W]e can reach no other conclusion than that it was the intention of the people in the adoption of the [home rule] amendment to leave a large measure of control over municipal affairs with the legislature." Id. at 71. We went on, "To construe the amendment as meaning that every act of the legislature relating to cities is subject to a charter ordinance unless the act of the legislature affected with uniformity every city from smallest to the greatest, practically destroys legislative control over municipal affairs . ..." Id. (emphasis added).
¶ 36. In sum, our precedent — going back to at least 1936 — confirms that facial uniformity is sufficient to satisfy the home rule amendment's uniformity requirement. As long as the statute, on its face, uniformly affects cities or villages throughout the State, the home rule amendment's uniformity requirement is satisfied.
*305 f 37. The effect of the court of appeals' interpretation of uniformity is to ignore the holdings in Van Gilder and Thompson. That is, while Van Gilder and Thompson instruct that facial uniformity is sufficient, the court of appeals would hold that facial uniformity would "all but obliterate the home rule amendment." Black, 364 Wis. 2d 626, ¶ 32. The court of appeals misperceives the point of the home rule amendment. As stated previously, "The legislative power in this state is lodged in the legislature. When it exerts that power, it exerts it on behalf of and in the name of the people of the State of Wisconsin." Van Gilder, 222 Wis. at 67. The home rule amendment "confer[red] upon cities and villages a measure of self-government not theretofore possessed;" however, the amendment did so via "a grant of power to cities and villages," not via an "express limitation upon the power of the Legislature."[22] Baxter, 195 Wis. at 445. ("The [amendment] is a grant of power to cities and villages. . . . The phrase 'subject only to this constitution,' etc., is a phrase of *306 limitation, but it is a limitation upon the power granted to cities and villages.").
¶ 38. Thus, under the home rule amendment, a city or village " operates freed from legislative restriction" only in "a rather narrow field." Van Gilder, 222 Wis. at 80-81. We have explained,
When the legislature deals with local affairs as distinguished from matters which are primarily of statewide concern, it can only do so effectually by an act which affects with uniformity every city. It is true that this leaves a rather narrow field in which the home-rule amendment operates freed from legislative restriction, but there is no middle ground. Either the field within which the home-rule amendment operates must be narrowed or the field within which the legislature operates must be narrowed, and as was pointed out in the Baxter Case, the amendment clearly contemplates legislative regulation of municipal affairs and there was no intention on the part of the people in adopting the home rule amendment to create a state within a state, an imperium in imperio.
Id. at 80-81. When the Legislature wants to legislate on a matter of local affairs, it may do so if the law, on its face, uniformly affects every city or village.
¶ 39. In this case, the Legislature banned residency requirements throughout Wisconsin by enacting Wis. Stat. § 66.0502. We conclude that Wis. Stat. § 66.0502 (consistent with the home rule amendment) uniformly affects every city or village. We so conclude because the plain language of Wis. Stat. § 66.0502 demonstrates its uniform effect: Wis. Stat. § 66.0502 says that "no local governmental unit" may have a residency requirement, and it goes on to define "local *307 governmental unit" to mean "any city, village, town, county, or school district" in the State. Wis. Stat. § 66.0502(2)-(3) (emphasis added).[23] Consequently, Wis. Stat. § 66.0502 uniformly bans residency requirements, and in so doing, it satisfies the home rule amendment's uniformity requirement.[24]
*308 B. WHETHER THE POLICE ASSOCIATION IS ENTITLED TO RELIEF AND DAMAGES UNDER SECTION 1983
¶ 40. Finally, we address the Police Association's argument that it is entitled to relief and damages under 42 U.S.C. § 1983. "Section 1983 provides a remedy against 'any person' who, under color of state law, deprives another of rights protected by the Constitution."[25] Collins v. City of Harker Heights, Tex., 503 U.S. 115, 120-21 (1992). "Section 1983, by itself, does not create any substantive constitutional rights;," rather, it "provides a remedy for a deprivation of such rights." Penterman v. Wis. Elec. Power Co., 211 Wis. 2d 458, ¶ 22, 565 N.W.2d 521 (1997) (citing Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 617-18 (1979)). Accordingly, in order to state a claim under section 1983, "a party must allege: (1) that a person acting under the color of state law committed the alleged conduct; and (2) that this conduct deprived the party of rights, privileges, or immunities protected by the Constitution or laws of the United States." Penterman, 211 Wis. 2d 458, ¶ 22.
*309 ¶ 41. The Police Association bases its section 1983 claim on an alleged denial of due process. The Due Process Clause of the Fourteenth Amendment "prohibits a state from depriving 'any person of life, liberty, or property without due process of law.'" Id., ¶ 39. Both this court and the Supreme Court of the United States recognize that three types of section 1983 claims may be brought against a state under the Due Process Clause:
(1) Plaintiffs may bring suit under sec. 1983 for state officials' violations of their rights under a specific provision in the Bill of Rights; (2) The Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions (these are commonly known as substantive due process rights); and (3) An action may be brought under sec. 1983 for a violation of procedural due process.
Casteel v. McCaughtry, 176 Wis. 2d 571, 578, 500 N.W.2d 277 (1993) (citing Zinermon v. Burch, 494 U.S. 113, 125 (1990)). In other words, a person bringing a section 1983 claim under the Due Process Clause can base this claim on an alleged violation of a specific provision in the bill of rights, on an alleged violation of substantive due process, or on an alleged violation of procedural due process.
¶ 42. The Police Association makes no argument that its section 1983 claim is based on a specific provision in the Bill of Rights, nor does it argue a procedural due process violation; rather, throughout its briefing, it has referred exclusively to substantive due process. Accordingly, we turn to discuss whether the City violated the Police Association's substantive due process rights.
*310 1. Whether The City Violated The Police Association's Substantive Due Process Rights
¶ 43. Substantive due process "protects individuals from 'certain arbitrary, wrongful actions regardless of the fairness of the procedures used to implement them.' " Penterman, 211 Wis. 2d 458, ¶ 39 (some quotation marks omitted) (quoting Zinermon, 494 U.S. at 125). "The test to determine if state conduct complained of violates substantive due process is if the conduct 'shocks the conscience ... or interferes with rights implicit in the concept of ordered society.' " State ex rel. Greer, 353 Wis. 2d 307, ¶ 57 (quoting State v. Schulpius, 2006 WI 1, ¶ 33, 287 Wis. 2d 44, 707 N.W.2d 495). The Police Association argues both that the City's actions shock the conscience and that its actions interfere with a liberty interest. We address each argument in turn.
i. Whether The City's Actions Shock The Conscience
¶ 44. Actions shock the conscience when they offend "even hardened sensibilities" or "the decencies of civilized conduct." Rochin v. California, 342 U.S. 165, 172-73 (1952); see also Uhlrig v. Harder, 64 F.3d 567, 574 (10th Cir.) ("[T]he 'shock the conscience' standard requires a high level of outrageousness . . . ." (citing Collins, 503 U.S. at 128)); Harron v. Town of Franklin, 660 F.3d 531, 536 (1st Cir. 2011) (describing acts that shock the conscience as "truly outrageous, uncivilized, and intolerable"). For example, in Rochin v. California, 342 U.S. 165 (1952), the case that first developed the shock the conscience test, police officers illegally broke into Rochin's home, jumped on him, *311 handcuffed him, struggled to open his mouth, forced an emetic solution into his stomach, and made him vomit, so they could obtain evidence. 342 U.S. at 166. The Supreme Court of the United States held that these actions were "too close to the rack and the screw to permit...." Id. at 172.
¶ 45. In the present case, the Common Council passed, and the Mayor signed, a resolution, which affirmed the section of its City charter requiring city employee residency. Relying on the home rule amendment, the resolution claimed that the City could still enforce its residency requirement because its charter (section 5.02) trumped the state statute (Wis. Stat. § 66.0502). Because the City believed its charter prevailed over the state statute, the resolution stated that the City would continue to enforce its residency requirement.[26]
¶ 46. Simply stated, these actions do not "shock the conscience" — they do not offend "even hardened sensibilities" or "the decencies of civilized conduct." Here, we had a genuine legal dispute as to which law, Wis. Stat. § 66.0502 or section 5-02 of the City's charter, would prevail. The Common Council and the Mayor, by passing the resolution, merely provided the City's opinion that, pursuant to the home rule amend *312 ment, section 5-02 of the City's charter trumped Wis. Stat. § 66.0502. The City has not pointed to any case where factually similar conduct was held to shock the conscience. Therefore, we are not willing to conclude that a genuine legal dispute over the priority of two competing laws (one a statute and one a section of a city charter) rises to the level of conscience-shocking behavior.
ii. Whether The City's Actions Deprived The Police Association Of A Fundamental Right Or Liberty
¶ 47. The Supreme Court of the United States "has always been reluctant to expand the concept of substantive due process because guideposts for reasonable decision making in this unchartered area are scarce and open-ended." Collins, 503 U.S. at 126. This' is because " [b]y extending constitutional protection to an asserted right or liberty interest, [the Court], to a great extent, place [s] the matter outside the arena of public debate and legislative action." Washington v. Glucksberg, 521 U.S. 702, 720 (1997). Accordingly, "[t]he doctrine of judicial self-restraint requires [a court] to exercise the utmost care whenever [a court] [is] asked to break new ground in this field," Collins, 503 U.S. at 126, "lest the liberty protected by the Due Process Clause be subtly transformed into the policy preferences of the [m] embers of [a court]," Glucksberg, 521 U.S. at 720. In determining whether an asserted' right falls within the purview of substantive due process, the Supreme Court has "regularly observed that the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, ’deeply rooted in this Nation's history and tra *313 dition.'" Id. (emphasis added) (quoting Moore v. City of East Cleveland, Oh., 431 U.S. 494, 503 (1977) (plurality opinion)).
¶ 48. Here, the Police Association has not asserted a fundamental right or liberty that is deeply rooted in this Nation's history and tradition. Rather, the Police Association claims that Wis. Stat. § 66.0502 — on the day it was enacted — created a liberty interest in being free from residency requirements as a condition of employment. To make this argument, the Police Association pulls from procedural due process cases.
¶ 49. For example, the Police Association relies on Hewitt v. Helms, 459 U.S. 460 (1983) for the proposition that a liberty interest may arise from two sources: the Due Process Clause or the laws of a state. 459 U.S. at 466. In Hewitt, the Supreme Court of the United States ultimately concluded that the "statutory framework governing the administration of state prisons gave rise to a liberty interest. . . , but. . . the procedures afforded [the] respondent were 'due process' under the Fourteenth Amendment." Id. (emphasis added). Throughout its opinion, the Court made reference to the state regulation giving rise to procedural due process protections: "procedural guidelines," "procedural rights," "procedural requirements," and "procedural safeguards." Id. at 471, 472, 473, 475. There, the "Due Process Clause require[d] only an informal nonadversary review of evidence . . . in order to confine an inmate feared to be a threat to institutional security to administrative segregation." Id. at 474 (emphasis added).
¶ 50. We recognize that the Supreme Court, in cases like Hewitt, has "repeatedly held that state *314 statutes may create liberty interests that are entitled to the procedural protections of the Due Process Clause of the Fourteenth Amendment." Vitek v. Jones, 445 U.S. 480, 488 (1980) (emphasis added). However, the "Supreme Court has never held that such state-created interests constitute a fundamental liberty interest protected under a substantive due process theory. Rather, the Court has analyzed state-created liberties under a procedural due process theory." Krausharr v. Flanigan, 45 F.3d 1040, 1047 (7th Cir. 1995) (emphasis added); see also Robinson v. Howell, 902 F. Supp. 836, 843 (S.D. Ind. 1995) ("A state cannot legislate or otherwise determine what constitutes a fundamental principle of justice and liberty so as to be worthy of protection under the federal constitution."). The Police Association has not pointed to any contrary authority. Because "[t]he doctrine of judicial restraint requires [a court] to exercise the utmost care" when determining whether a substantive due process right exists, we decline to create a new right or liberty interest in being free from residency requirements as a condition of employment. See Collins, 503 U.S. at 126. As a result, we conclude that the Police Association's substantive due process argument fails. Because the Police Association has not shown a deprivation of rights, privileges, or immunities protected by the Constitution or laws of the United States, it is not entitled to relief or damages under section 1983.[27]
*315 IV. CONCLUSION
¶ 51. To summarize, first, we hold that Wis. Stat. § 66.0502 precludes the City from enforcing its residency requirement. The Legislature has the power to legislate on matters of local affairs when its enactment uniformly affects every city or every village, notwithstanding the home rule amendment. For purposes of the home rule amendment, an enactment is uniform when it is facially uniform. Wisconsin Stat. § 66.0502 is facially uniform because it applies to "any city, village, town, county, or school district." Wis. Stat. § 66.0502 (2) (emphasis added). Because Wis. Stat. § 66.0502 uniformly affects every city or village, it trumps section 5-02 of the City's charter. Milwaukee may no longer enforce its residency requirement. Second, we hold that the Police Association is not entitled to relief or damages under 42 U.S.C. § 1983. Its section 1983 claim fails because the Police Association has not met the requirements necessary to prevail on a section 1983 claim. Specifically, the Police Association has not shown a deprivation of rights, privileges, or immunities protected by the Constitution or laws of the United States.
By the Court. — The decision of the court of appeals is affirmed in part and reversed in part.

 The Honorable Paul R. Van Grunsven presided.

 In Madison Teachers, Inc. v. Walker, 2014 WI 99, 358 Wis. 2d 1, 851 N.W.2d 337, we noted, "The home rule amend *280 ment does not apply to counties in Wisconsin. However, counties have home rule protection pursuant to statute, though it is more limited than the protection afforded by constitutional municipal home rule." 358 Wis. 2d 1, ¶ 89 n.26.

 All subsequent references to the Wisconsin Statutes are the 2013-2014 version unless otherwise noted.

 As noted in an earlier footnote, the home rule amendment applies only to cities and villages. Wisconsin Stat. § 66.0502 applies to any city, village, town, county, or school district.

 In their briefs, both the City and the Police Association state that the parties have agreed that the City will not act to enforce its residency requirement until our final decision on the merits.

 Stated otherwise, we affirm the court of appeals' determination that the Police Association is not entitled to relief and damages pursuant to section 1983. However, we reverse the court of appeals' conclusion that, under the home rule amendment, section 5-02 of the City's charter trumps Wis. Stat. § 66.0502.

 Milwaukee is certainly not the only city that had a residency requirement prior to the enactment of Wis. Stat. § 66.0502. The record shows that 114 municipalities have some type of restriction on where their employees reside. Moreover, 13 municipalities required all their employees to live within the municipal limits. The record also shows that 20 counties have some type of residency restriction on where their employees reside. Further, 3 counties require all or most of their employees to live within the county. See Legis. Fiscal Bureau, No. 544, Local Government Employee Residency Requirements, at 3 (May 9, 2013).

 The Governor signed Act 20 on June 30, 2013, and the Act took effect on July 2, 2013.

 Wisconsin Stat. § 66.0502 contains exceptions that permit a 15 mile residency requirement for law enforcement, fire, or emergency personnel:
*285 (4)(a) This statute does not affect any statute that requires residency within the jurisdictional limits of any local governmental unit or any provision of state or local law that requires residency in this state.
(b) Subject to par. (c), a local governmental unit may impose a residency requirement on law enforcement, fire, or emergency personnel that requires such personnel to reside within 15 miles of the jurisdictional boundaries of the local governmental unit.
(c) If the local governmental unit is a county, the county may impose a residency requirement on law enforcement, fire, or emergency personnel that requires such personnel to reside within 15 miles of the jurisdictional boundaries of the city, village, or town to which the personnel are assigned.
(d) A residency requirement imposed by a local governmental unit under par. (b) or (c) does not apply to any volunteer law enforcement, fire, or emergency personnel who are employees of a local governmental unit.
Wis. Stat. § 66.0502(4)(a)-(d).

 The Police Association filed on behalf of "itself and on behalf of its Members, Michael V. Crivello, James A. Black, Glenn J. Podlesnik, and Steven J. Van Erden." For readability purposes, we refer to this group collectively as the "Police Association."

 Wisconsin Stat. § 806.04(1) provides, in pertinent part, "Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed."

 At one point, the Police Association also sought a writ of mandamus compelling the City to begin complying with Wis. Stat. § 66.0502 by ceasing enforcement of its residency requirement. However, as the circuit court noted in its decision and order, " [The Police Association] is no longer pursuing the writ of mandamus set forth as the third cause of action in the complaint. . . ." Accordingly, we do not consider whether the Police Association is entitled to a writ of mandamus.

 In addition, the Fire Fighters Association sought costs and disbursements.

 Only the Police Association and Michael Crivello cross-appealed. James Black, Glenn Podlesnik, and Steven Van Erden did not cross-appeal.

 In full, the home rule amendment states, "Cities and villages organized pursuant to state law may determine their local affairs and government, subject only to the constitution and to such enactments of the legislature of statewide concern as with uniformity shall affect every city or every village. The method of such determination shall be prescribed by the legislature." Wis. Const, art. XI, § 3(1) (amended 1981).
An earlier version of the home rule amendment read, " Cities and villages organized pursuant to state law are hereby empowered, to determine their local affairs and government, subject only to the constitution and to such enactments of the legislature of state-wide concern as shall with uniformity affect every city or every village. The method of such determination shall be prescribed by the legislature." Wis. Const, art. XI, § 3(1) (1924).

 The home rule amendment was adopted in 1924. While our current review of the home rule amendment may be temporally removed from its adoption, the court's review and interpretation in State ex rel. Harbach v. City of Milwaukee, 189 Wis. 84, 206 N.W.2d 210 (1925) was almost simultaneous with the amendment's enactment, as that case was decided in 1925. At the time of adoption, our interpretation of the amendment (which mirrors the Harbach court's interpretation) was considered "obvious." Harbach, 189 Wis. at 86.

 State ex rel. v. Baxter, 195 Wis. 437, 219 N.W. 858 (1928) examined the text, in particular the structure, of the home rule amendment, explaining,
Power is granted to cities and villages "to determine their local affairs and government, subject only to the constitution and to such enactments of the legislature of state-wide concern as with uniformity shall affect every city or every village." The phrase "subject only to this Constitution," etc., is a phrase of limitation, but it is a limitation upon the power granted to cities and villages. Nowhere do we find words of limitation upon the power of the Legislature.
195 Wis. at 445.

 Similar to the City, the concurrence and the dissent believe that "a legislative enactment prevails over a conflicting city charter ordinance under the home rule amendment when *296 the enactment both concerns a matter of statewide concern and affects every city or village with uniformity." Concurrence, ¶ 66; dissent, ¶ 121 ("A legislative act must be of statewide concern and then it must apply uniformly.").
The dissent purports to reach its conclusion by reading the text of the amendment to "mean what it says." See dissent, | 120. Its "textual" analysis consists of a regurgitation of the home rule amendment, followed by a conclusory statement that the text of the amendment requires both a statewide concern and uniformity. Dissent, ¶¶ 120 — 21. Nowhere does the dissent attempt to engage in a true analysis of the text by pulling apart, explaining, and defining the phrases and terms used in the home rule amendment.
The bulk of the concurrence's analysis rests on an amicus brief from the Baxter case and some newspaper clippings. According to the concurrence, the amicus brief, written by the drafter of the home rule amendment, confirms that a legislative enactment must both involve a matter of statewide concern and with uniformity affect every city or every village. Concurrence, ¶ 62; but see State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶ 52, 271 Wis. 2d 633, 681 N.W.2d 110 ("Ours is a government of laws not men, and it is simply incompatible with democratic government, or indeed, even with fair government, to have the meaning of a law determined by what the lawgiver meant, rather than by what the lawgiver promulgated. It is the law that governs, not the intent of the lawgiver .. . Men may intend what they will; but it is only the laws that they enact which bind us." (internal quotation marks omitted) (citing Antonin Scalia, A Matter of Interpretation, at 17 (Princeton University Press, 1997)).
What the concurrence fails to note is that numerous amicus briefs in addition to the one cited by the concurrence were filed in Baxter and other home rule amendment cases. These briefs raised varying interpretations of the home rule amendment. See Harbach, 189 Wis. 84, Walter H. Bender on behalf of the Board of Trustees of Milwaukee Public School Teachers Annuity and Retirement Fund as Amicus Curiae, at 17-18 (1925) (noting that the phrase "subject to such enactments of the legislature of statewide concern as shall with uniformity affect every city or every village," "limit[s] the *297 powers conferred upon the municipality by the grant" and "limit[s] the restrictive effect which the grant would otherwise have upon the powers of the legislature"); Baxter, 195 Wis. 437, William Ryan on behalf of Olin and Butler as Amicus Curiae, at 24 (1928) ("This limitation ... has been seized upon by the advocates of paramount authority of cities under the home rule amendment as a limitation upon the power of the legislature, rather than a limitation upon the power granted to cities and villages by the home rule amendment. Much of the uncertainty regarding the scope of the home rule amendment seems to have arisen from this confusion of the application of the limitation; treating it as a limitation upon the power of the legislature instead of treating it as it clearly is — a limitation upon the exercise of the grant of power under the home rule amendment."); Id., William F. Hannan as Amicus Curiae, at 5 (1928) ("If, by the ratification of the home rule amendment, any restriction has been placed upon the power of the legislature to legislate with respect to municipalities (such a restriction is not conceded), it is a restriction or limitation upon the legislative power to deal with 'the local affairs of government' of cities and villages. No contention is or can be made that the power of the legislature, with respect to matters that do not constitute 'the local affairs and government' of cities and villages, has been curtailed in any way.").
Since 1925, many Justices have been called upon to interpret the home rule amendment. These Justices had ample briefing, with numerous parties presenting varying interpretations of the home rule amendment. See, e.g., Baxter, 195 Wis. at 443-44 ("[W]e invited briefs amicus curiae [to address questions related to the home rule amendment.] The response to this invitation was most gratifying. We have been favored with excellent briefs on the part of able counsel, and we have been greatly assisted thereby in arriving definitely and clearly at the conclusions hereinafter announced."). The very first court to interpret the amendment unanimously declared that our reading of the home rule amendment was "obvious." Harbach, 189 Wis. at 86. Additionally, subsequent courts interpreting the home rule amendment have found our reading "definite[] and clear[]." Baxter, 195 Wis. at 443-44.
*298 In short, the dissent and the concurrence may present one way to interpret the home rule amendment. But their interpretation has been outright rejected by informed Wisconsin Supreme Court Justices since 1925.

 In full, Van Gilder states,
The home-rule amendment does not lodge the power to determine what is a "local affair" or what is a "matter of state-wide concern' either with the municipality or with the legislature or attempt to *300 define those terms. In the event of a controversy between municipalities and the state therefore the court is required to make the ultimate determination. In the first instance, the determination of what is a "local affair" and what is a "matter of state-wide concern" would seem to be for the legislature for the reason that such a determination must involve large considerations of public policy. Even though the determination made by it should be held not to be absolutely controlling, nevertheless it is entitled to great weight because matters of public policy are primarily for the legislature.
222 Wis. at 73-74.

 Despite articulating an understanding of the rule that the Legislature's determination is entitled to great weight, the court of appeals chose to dismiss the Legislature's specific determination here:
The argument that residency requirements are a matter of statewide concern simply because the legislature said so is not persuasive because it is unsubstantiated. Neither the Police Association nor the trial court point to any facts supporting this claim; the Police Association merely argues on appeal that the Legislature can do what it wants. We disagree. ... In this case, we cannot conclude that "because the legislature said so" is reason enough to affirm the trial court when there are no facts to support such a conclusion. The facts in the record, exemplified by the Legislative Fiscal Bureau Paper, make clear that the goal of Wis. Stat. § 66.0502 was to target the City of Milwaukee. Nearly every portion of the Legislative Fiscal Bureau paper's analysis explains in great detail how Milwaukee will be affected. The effect *301 on the state, on the other hand, is never substantiated, and only given lip-service with broad policy arguments.
Black v. City of Milwaukee, 2015 WI App 60, ¶ 21, 364 Wis. 2d 626, 869 N.W.2d 522. Our cases discussing deference to legislative determinations of whether a matter is primarily of local or statewide concern under the home rule amendment have never required the Legislature to substantiate such determinations. See, e.g., Madison Teachers, 358 Wis. 2d 1, ¶¶ 125-128; Van Gilder, 222 Wis. at 73-74. The court of appeals was not bound by the Legislature's determination that "public employee residency requirements are a matter of statewide concern." However, the court of appeals should have at least attempted to follow the law it said it understood by giving great weight to that legislative determination.

 In its brief, the Police Association conceded that residency requirements at least partly involve matters of local concern.

 "In ascertaining the meaning of the home-rule amendment, we should also take into account the fact that the legislature was not hostile to a larger measure of local self-government by cities." Van Gilder, 222 Wis. 2d at 71. The Legislature was not adverse to the idea of cities having some control because, as noted by the Attorney General in the helpful amicus curiae brief prepared by the Solicitor General's office,
At the time Wisconsin debated the Amendment, the problem of the day was the Legislature enacting city-specific legislation, addressing purely local issues, because cities lacked sufficient legal power to regulate their own affairs. The Amendment sought to cure this problem by giving cities general law-making authority so the Legislature would no longer have to pass such laws.

 Here, the Legislature ensured that Wis. Stat. § 66.0502 would with uniformity affect every city or village by making Wis. Stat. § 66.0502 apply to any city, village, town, county, or school district in the state. While the Legislature can preempt a city ordinance under the home rule amendment by making a statute apply to all cities or villages, it is no small decision to make a statute applicable to every city or village in the State. The Legislature must still make an important trade-off when it is considering whether it should legislate on a matter of local concern.

 In its petition for review, the Police Association raised two additional issues:
1. May a municipality disregard legislative prohibitions on certain conditions of municipal employment, by simply passing an ordinance disputing the legislature's policy determination and asserting [h]ome [r]ule authority to do so, without first seeking a declaration as to the rights and obligations of the parties?
2. Should a municipality be required to prove "beyond a reasonable doubt" that a statute is an unconstitutional overreach of its authority under the [h]ome [r]ule [a]mendment?
We do not address these issues because they are not necessary to resolve this case. See State v. Cain, 2012 WI 68, ¶ 37 n.11, 342 Wis. 2d 1, 816 N.W.2d 177 (" [A]n appellate court should decide cases on the narrowest possible grounds." (quoting Md. Arms Ltd. P'ship v. Connell, 2010 WI 64, ¶ 48, 326 Wis. 2d 300, 786 N.W.2d 15)); see also Hull v. State Farm Mut. Auto Ins. Co., 222 Wis. 2d 627, 640 n.7, 586 N.W.2d 863 (1998) ("As a general rule, when our resolution of one issue disposes of a case, we will not address additional issues.").

 In full, section 1983 reads,
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
42 U.S.C. § 1983.

 In its brief, the Police Association applied the shocks the conscience test to both the Mayor's actions and the Common Council's actions: "Substantive due process is violated by executive action when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense," and " Substantive due process is violated by legislative action and can properly be recognized as arbitrary or conscience shocking, when its sweep is unnecessarily broad and invades a protected freedom." (quotation marks and citation omitted).

 The Police Association appears to argue (1) that the City's resolution deprived it of a non-fundamental liberty interest in being free from a residency requirement and (2) that this deprivation does not survive rational basis review. Even assuming that the first of these arguments is valid (which we do not decide), the resolution survives rational basis review. The resolution was rationally related to the City's *315 legitimate interest in expressing its opinion on whether, pursuant to the home rule amendment, section 5-02 of the City's charter trumped Wis. Stat. § 66.0502.