In the

# United States Court of Appeals
## For the Seventh Circuit

No. 15-3113

MANISTEE APARTMENTS, LLC,
individually and as class representative,

*Plaintiff-Appellant*,

*v.*

CITY OF CHICAGO, a municipal corporation,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:14-cv-06813 — **Robert W. Gettleman**, *Judge*.

ARGUED SEPTEMBER 28, 2016 — DECIDED DECEMBER 20, 2016

Before POSNER, FLAUM, and MANION, *Circuit Judges*.

MANION, *Circuit Judge*. Plaintiff Manistee Apartments sued the City of Chicago alleging that the City violated their due process rights by refusing to release judgment liens until the debtors paid attorneys' fees and costs. The district court dismissed the plaintiff's class action complaint, holding that the plaintiff suffered no deprivation of a constitutionally protected property interest. The court also denied the

plaintiff's motion for reconsideration and for leave to file an amended complaint. For the reasons below, we affirm.

## I. BACKGROUND

On September 19, 2011, the City of Chicago obtained a default administrative judgment of $3,540 against Manistee Apartments, based upon a finding of various violations of the Chicago Municipal Code. Pursuant to Illinois state law, the City later registered this judgment with the Circuit Court of Cook County and imposed a lien against plaintiff's real estate. 735 ILCS 5/12-101; 65 ILCS 5/1-2.1-8(d). Plaintiff contends that it first received actual notice of this lien (as opposed to constructive notice, which it received as soon as the lien was recorded) during routine title insurance review and underwriting that occurred as it was preparing to sell its properties. Upon discovery that the title to the property was not clean, and with a pending sale, plaintiff sought to quickly settle its bill with the City.

On January 27, 2014, and in response to inquiry, the City of Chicago provided a "payoff letter" demanding $5,655.16. This demand letter reflected the original, undisputed $3,540 lien, plus $720.34 in uncontested statutory interest. The remainder, $1,394.82, represents collection costs and attorneys' fees that the City demanded, and is the sole amount in controversy before this court, an amount better suited for small claims court in Illinois.

The day after the City issued the payoff letter, January 28, 2014, the plaintiff conveyed the property via warranty deed, alleging to an out-of-state buyer that the title was unencumbered. Around this time, the plaintiff also settled with the City, paying the full amount demanded, $5,655.16,

under protest. Eight months later, plaintiff filed a class action complaint in federal district court, alleging violations of the Due Process Clause of the Fourteenth Amendment, the Illinois state constitution, and other violations of Illinois state law.

The plaintiff contends that by responding to its request for a payoff letter with a demand for payment greater than the lien amount, the City of Chicago was violating the plaintiff's due process rights. What the City should have done, apparently, is one of two things. It could have responded with information the plaintiff already had—the publicly available lien recorded in Cook County and the publicly available statutory interest calculation, along with an offer to settle for that amount or less. It also could have replied with a lawsuit in Illinois court seeking from plaintiff the fees and costs. What was not permissible, in the plaintiff's view, was asking for anything more. By refusing to release the lien immediately or take action in Illinois state court, the plaintiff contends, the City was depriving it of a property interest and thus needed to provide the plaintiff due process. Since the City already had a judgment, however, it had no incentive to settle for less. Manistee's litigation position, it seems, was intentionally unreasonable: more calculated to triggering a ripe lawsuit than actually seeking quick release of a lien.

The district court disagreed, granting the City's motion to dismiss. It noted that the plaintiff failed to allege facts that plausibly supported the assertion that it paid the City's demand under duress. Because it was not under duress, Manistee's payment was voluntary. And because its payment was voluntary, Manistee was not deprived of a

constitutionally protected property interest, and therefore failed to state a claim under 42 U.S.C. §1983.

Finding no violation of the federal Constitution, the district court went on to find no violation of the state constitution ("the same tests apply"), and declined to exercise supplemental jurisdiction over the purely state law claims. Plaintiff then moved for reconsideration and leave to amend the class action complaint, which the court denied. Plaintiff appeals both the dismissal of its case and the denial of its motions for reconsideration and leave to amend.

## II. ANALYSIS

We review a district court's order granting a motion to dismiss under Rule 12(b)(6) de novo. *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 847 (7th Cir. 2008). We assume all well-pleaded allegations are true and draw all reasonable inferences in the light most favorable to the plaintiff. To survive such a motion, a complaint must "state a claim to relief that is plausible on its face." *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009). We review a district court's denial of a motion for reconsideration under Rule 59(e) and denial of a motion for leave to amend only for abuse of discretion. *Billups v. Methodist Hosp. of Chicago*, 922 F.2d 1300, 1305 (7th Cir. 1991); *Chavez v. Ill. State Police*, 251 F.3d 612, 628 (7th Cir. 2001).

## A. Dismissal of Constitutional Due Process Claims

The Fourteenth Amendment explicitly prohibits state governments from depriving persons of "life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. Individual citizens are afforded a cause of action to vindicate this constitutional right to procedural due process

through 42 U.S.C. § 1983. To state a claim for a procedural due process violation, a plaintiff must demonstrate (1) a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process. *Buttitta v. City of Chicago*, 9 F.3d 1198, 1201 (7th Cir. 1993).

It is, of course, indisputable that the plaintiff had a cognizable property interest in the entirety of the amount it paid to the City of Chicago, $5,655.16. But, as the district court correctly noted, Manistee *voluntarily* paid this amount to the City, and voluntary payment is not a property deprivation.[1]

Against this, the plaintiff alleges that its payment was not, in fact, voluntary, but coerced. Obviously, no one wants to have to pay more than they have to in order to obtain a benefit, such as the release of a lien outside established formal process. Here, the City did not threaten to do *anything* to Manistee: it just refused to accede to a demand by a private party for a thing—*immediate* release of a lien—to which that private party was not entitled.

As the district court properly held, Manistee was not coerced to pay anything. The district court noted that Manistee had a number of other options it could have taken

---

[1] Even assuming Manistee were deprived of this payment, there appears to have been ample pre- and post-deprivation process. First, the underlying administrative judgment itself—uncontested by the plaintiff— explicitly noted that "Pursuant to Municipal Code Chapter 1-19, the city's collection costs and attorney's fees shall be added to the balance due if the debt is not paid prior to being referred for collection." This constituted pre-deprivation notice. Second, the plaintiff's original complaint alleged state law claims for restitution—this, and any prerequisite state law administrative filings for overpayment suggest that state law provides avenues for relief.

without affecting the legal relationship between it and the City. Manistee could have done as it had for years prior: nothing. Eventually the City might move to foreclose on its property, or the City might not. Or Manistee could have tendered payment of principal and interest to the City and sought immediate release of its lien under Illinois state law. 735 ILCS 5/12-183(b). It chose not to do that. Or Manistee could have sought a declaratory judgment action in state court.

The district court notes a fourth option available to Manistee: it could have sold the property encumbered by the lien. And in its reply brief, the City raises a curious fact relating to Manistee's claim to have been over a barrel: plaintiff managed to sell its property without actually recording the release of judgment provided by the City. The lien was only released on June 10, 2016, while this action was pending. The property, however, was sold for $10 via warranty deed to an Arizona corporation on January 28, 2014.[2]

These facts cut to the heart of the plaintiff's contention that it was forced to pay the $5,655.16 to the City, lest it break its contract and miss out on a lucrative business deal. At the time Manistee paid the City, the contract was already broken. Presuming that the sale of the property was arm's-length, it appears the value of the property less the City's lien was negative. The administrative record of municipal code violations suggests that, at the time, the out-of-compliance property was abandoned, requiring extensive repairs before being certified for occupancy. In such a situation the

---

[2] Brief and Appendix of Defendant-Appellee at A4.

economically rational thing to do would be to do nothing. Surely if the property had substantial value and the plaintiff were in a hurry to clear the title, the closing price would not turn out to be $10.

And if the property were not valuable, what would be the hurry? After recording the lien in January 2012 and then failing to serve the plaintiff with a citation to discover assets, the City simply gave up. Under state law, the City *could* have foreclosed, however. And that might have mooted the plaintiff's class action.

The fact of the sale prior to clearing title also exposes the heart of the plaintiff's proposed class action. It claims that the aggrieved class is numerous—in the hundreds, if not thousands. But how many corporations find themselves in a position like Manistee's—having promised a third party that title was clean, conveyed that property without clean title, and allegedly at the mercy of the City over a lien no longer attached to real property they own? Put another way: how often is the City in a position to "coerce" payment from a payee on the hook for a broken contract? That class cannot be very large.

Finally, on appeal the plaintiff suggests that the deprivation of the property interest occurred when the City refused to release the lien upon receipt of the request for a payoff letter. This might be taken to allege that the cognizable property interest was not the $5,655.16, but a sort of option-contract interest—immediate release of a lien upon tendering payment. But as the City makes clear, Manistee never actually did tender payment of the judgment plus interest, nor did it seek immediate release of the lien through the state law process established by 735 ILCS 5/12-183(b).

In sum, on any read of the plaintiff's allegations, no property deprivation occurred, and thus, no violation of constitutional due process.

So why would such a small amount cause the plaintiff to exert so much time and effort? Obviously the filing fees and attorneys' fees relating to the many hours and hundreds of pages of brief-writing far eclipses $1,394.82. Bringing a federal civil suit and litigating it to conclusion is an expensive business. As conceded at oral argument by plaintiff's counsel, the only reason this case makes any economic sense is due to its anticipated class action payout.

By demanding a payoff letter, and knowing full well that the letter would include attorneys' fees and costs above and beyond the lien amount plus interest, plaintiff's counsel was able to obtain a benchmark for determining class damages. And the hope in such cases is typically not to litigate the claim to resolution, but to survive a motion to dismiss and settle the case, obtaining a large award from the City.

Upon surviving a motion to dismiss, it is certain that class counsel would argue the potential class to be extremely broad. But as noted, given the uniqueness of the plaintiff's case it is highly unlikely there could be any class certification. As a result, it is apparent that the goal here would be to settle after surviving a motion to dismiss, but before losing at the class certification stage.

The City might suspect as much, but might still be faced with a situation where the costs to get through discovery and briefing on the subject would be greater than the settlement offer that plaintiff's counsel might offer. In such a situation the settlement offer represents the "nuisance value" of the

case. This is a persistent problem for defendants in class action lawsuits.

One possible solution to this problem is requiring judges to do some threshold level of review of the merits of a class action before allowing certification of a class, or before approving a settlement.[3] This has been held to be generally barred under the current Rule 23, although the line has not always been clear.[4] Nevertheless, it is cases like the one before us that demonstrate precisely why the courts, and Congress, ought to be on the lookout for ways to correct class action abuses.

Given the complexity of our legal system, it is impossible to develop perfect standards for identifying and quickly disposing of frivolous claims. Inevitably this court and other courts will be faced with cases that waste the time and money of everybody. Beyond addressing the legal claims before us as we would in any ordinary case, we must frankly identify situations where we suspect the lawyers, rather than the claimants, are the only potential beneficiaries. This is one such case.

---

[3] *See* Randy J. Kozel & David Rosenberg, *Solving the Nuisance-Value Settlement Problem: Mandatory Summary Judgment*, 90 VA. L. REV. 1849 (2004). This article was written prior to the Class Action Fairness Act of 2005, Pub. L. No. 109-2. That law ameliorated, but by no means solved, the problem of class action abuse. *See* Mark Moller, *The Rule of Law Problem: Unconstitutional Class Actions and Options for Reform*, 28 HARV. J.L. & PUB. POL'Y 855 (2005); Keith N. Hylton, *Asbestos and Mass Torts with Fraudulent Victims*, 37 SW. U. L. REV. 575 (2008).

[4] *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974); *see also Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 677 (7th Cir. 2001).

**B. Denial of Motions to Reconsider and Amend**

We also affirm the district court's decision to deny both Manistee's motion for reconsideration and its motion for leave to amend its complaint. The plaintiff's motion for reconsideration and its proposed amended complaint, both of which are in the record, allege no new facts or law which could turn Manistee's payment into a property deprivation, and thus state a claim for relief. Reconsideration or amendment would have been a waste of that court's time.

### III. CONCLUSION

We agree with the district court that the plaintiff has failed to state a claim against the City of Chicago. The dismissal of its case, and denial of its motions for reconsideration and amendment, are therefore

AFFIRMED.