COURT OF APPEALS
DECISION
DATED AND FILED

July 9, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2024AP178**

STATE OF WISCONSIN

Cir. Ct. No.  2021CV631

IN COURT OF APPEALS
DISTRICT II

WILDWOOD ESTATE, LLC,

   PLAINTIFF-RESPONDENT,

V.

VILLAGE OF SUMMIT,

   DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Waukesha County: MICHAEL P. MAXWELL, Judge. *Affirmed*.

Before Gundrum, P.J., Grogan, and Lazar, JJ.

¶1    LAZAR, J.   The Village of Summit appeals the circuit court's grant of declaratory and summary judgment in favor of Wildwood Estate, LLC as well as its award of attorney fees to Wildwood pursuant to 42 U.S.C. § 1988.  The Village contends that the court erred in three respects: (1) by considering a due

process claim Wildwood allegedly raised during the declaratory and summary judgment motion process without amended pleadings; (2) by determining that the short-term rental ordinance, which the Village contends was enacted pursuant to its police powers, was void and unenforceable as a zoning ordinance; and (3) by awarding Wildwood attorney fees. In the alternative, the Village seeks a reduction of the attorney fees award because, it asserts, Wildwood only arguably prevailed on one claim.

¶2 Wildwood asks this court to affirm on all grounds, asserting that the circuit court properly considered its due process arguments, that the ordinance in question is void and unenforceable because the Village failed to follow required zoning procedures pursuant to *Zwiefelhofer v. Town of Cooks Valley*, 2012 WI 7, 338 Wis. 2d 488, 809 N.W.2d 362, and that the award of attorney fees was proper. We agree with Wildwood and affirm.

## BACKGROUND

¶3 In 2017, Wildwood acquired real property in Summit. Also in 2017, the state legislature enacted WIS. STAT. § 66.1014 (2023-24),[1] entitled "Limits on residential dwelling rental prohibited." 2017 Wis. Act 59, § 996G.[2] Throughout 2018 and 2019, Wildwood rented out its property through Vacation Rentals by Owner ("Vrbo"); while the rental time periods ranged from three to seven nights, the "great majority" were for less than seven nights.

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version.

[2] This law is colloquially known as Wisconsin's "Right to Rent" law. *Sullivan v. Town of Stockholm*, 402 F. Supp. 3d 534, 537 (W.D. Wis. 2019) ("[T]he Wisconsin legislature enacted a 'Right to Rent' law, WIS. STAT. § 66.1014, which limited Wisconsin towns' authority to regulate short-term rentals.").

¶4    On August 15, 2019, the Village adopted Ordinance No. 71-2019 (the "Ordinance"), codified in its chapter containing business regulations, to "create regulation of vacation rental establishments in the Village of Summit." *See* SUMMIT, WIS., CODE ch. 6, art. V (enacted by Ordinance No. 71-2019 (Aug. 15, 2019)).    Relevant to this appeal, Section 6-157 of the Ordinance provides as follows:

> (b) *License required.* No vacation rental establishment may operate in the village unless an annual vacation rental establishment license for such operation is granted by the village, and only in full compliance with such license.  A separate tenant permit is required for each rental of the vacation rental establishment.
>
> ….
>
> (e) *Minimum standards.* Conditions under which permitted.  A license shall not be granted for a vacation rental establishment unless all of the following conditions are met per the satisfaction of the village planner:
>
> ….
>
> (4) Each vacation rental establishment shall be required to keep a register and require all guests to sign such register using their actual legal names including middle initial and address before being assigned sleeping quarters.  The register shall be available for inspection by the Village of Summit Police Department, and village planner or designee of the village for a period of not less than one year.
>
> ….
>
> (g) *Prohibition.* Rental of a residential dwelling for six consecutive days or fewer is prohibited....

In addition, Section 6-158 provides for penalties for noncompliance:

> Violations of this article are subject to penalties in the maximum amount of $10,000.00 and minimum amount of $1,000.00, for each day of violation, and under no

circumstance shall a penalty be imposed that is less than the rental amount charged.

¶5 The Village first contemplated enactment of the Ordinance six months prior to its adoption, seeking to model it after a zoning ordinance regulating short-term rentals from the Village of Oconomowoc Lake (the "VOL Ordinance").[3] At a February 2019 village board meeting, the village president proposed holding a public hearing on the Ordinance. At an April 2019 meeting, the police chief stated that there had not been problems with vacation rentals the prior year, but that there had been issues with one property "a couple of years ago." In response to a query by the president as to whether a public hearing was required, the Village's attorney stated, "[N]o, unless it is put into the Zoning Code." The Village voted to direct its staff to draft a short-term rental ordinance similar to the VOL Ordinance. No public hearing was ever held.

¶6 On December 17, 2019, the Village advised Wildwood in writing that it intended to begin enforcing the Ordinance on or after January 6, 2020. Pursuant to WIS. STAT. § 893.80, Wildwood served a Notice of Claim upon the Village in June 2020 challenging the four Ordinance provisions identified above. Wildwood sought a nonconforming use exemption because it had been renting its property for periods of fewer than seven consecutive nights before the Ordinance was passed. In October 2020, the Village disallowed the Notice of Claim.

¶7 Undaunted, Wildwood applied for a legal nonconforming use exemption from the following provisions in the Ordinance: (1) the tenant permit

---

[3] In its preamble, the VOL Ordinance purports to be a zoning law, stating "WHEREAS, the Village of Oconomowoc Lake Village staff have recommended that the Village of Oconomowoc Lake Zoning Code be modified to comply with current State laws in this regard.…" Village of Oconomowoc Lake, Wis., Ordinance 294 (Nov. 1, 2018).

application in § 6-157(b); (2) the log of guests in § 6-157(e)(4); and (3) the seven-day minimum rental period in § 6-157(g). On April 14, 2021, the Village refused to grant the legal nonconforming use exemption. On April 16, 2021, Wildwood commenced an action against the Village seeking declaratory judgment that the Ordinance is unenforceable and that it was entitled to a legal nonconforming use exemption. Wildwood also alleged a violation of 42 U.S.C. § 1983,[4] asserting that "[t]he actions of the Village, including but not limited to denying [Wildwood's] request for a legal nonconforming use without explanation or justification, deprived [Wildwood] of property without due process of law, in violation of the Fourteenth Amendment of the United States Constitution."

¶8      In July 2022, Wildwood and the Village filed competing dispositive motions. Wildwood moved for declaratory and summary judgment and sought attorney fees based upon an alleged deprivation of its due process rights. It alleged that although the Ordinance was "arbitrarily and capriciously classif[ied]" as a business ordinance, it was actually a zoning amendment and arguing that "the Village impermissibly changed its zoning regulations to prohibit certain uses of land and dwellings without following the statutory and local procedural requirements." The Village moved for summary judgment seeking an order upholding the validity of the Ordinance. In its response brief (to Wildwood's motion) and its reply (in support of its own motion), the Village argued that Wildwood's due process zoning argument was not set forth in the complaint and should be disregarded by the circuit court. Despite this assertion, the Village addressed Wildwood's argument on the merits in its briefs.

_____

[4] In connection with this third cause of action, Wildwood sought reimbursement of all its attorney fees and costs.

5

¶9      The circuit court held oral argument on all motions in October 2022. Wildwood's due process zoning argument was fully debated by the parties, as was the Village's police power authority. The court inquired whether the Village believed it had had the opportunity to argue the "whole zoning issue" in its briefs and at the hearing. The Village stated that while it did not believe it should have had to argue this issue, it was "able to do so" and that the court had "given [it] the opportunity to do so both [that day] and in [its] written submissions."

¶10      The circuit court issued a written decision in January 2023, granting Wildwood's motion for summary judgment in part[5] and denying the Village's motion. The court concluded that the Ordinance was a zoning ordinance, and since it was enacted without following the proper procedures, it violated Wildwood's due process rights. Accordingly, the court declared the Ordinance void and unenforceable as an illegal zoning ordinance.

¶11      Following additional briefing and a status conference, the circuit court entered another written decision declaring Wildwood to be the prevailing party and awarding reasonable attorney fees under 42 U.S.C. § 1988.[6]

¶12      The Village appeals.

---

[5] Wildwood's request for a nonconforming use exemption was denied as moot; the decision stated that "would be an issue for another day assuming the Village follows the proper procedure to enact a zoning ordinance."

[6] In another written order and amended judgment, the circuit court awarded Wildwood all of its requested attorney fees ($54,439.00), including those incurred in seeking the attorney fees, together with costs ($648.95), for a total judgment of $55,087.95.

**STANDARD OF REVIEW**

¶13 "Summary judgment is appropriate when there are no disputed material facts and the moving party is entitled to judgment as a matter of law," and we review the circuit court's grant of summary judgment independently. *Scenic Pit LLC v. Village of Richfield*, 2017 WI App 49, ¶6, 377 Wis. 2d 280, 900 N.W.2d 84; *see also Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315-17, 401 N.W.2d 816 (1987) (setting out method for appellate review).

¶14 A circuit court's decision to grant or deny declaratory relief is within its discretion. *Commercial Union Midwest Ins. Co. v. Vorbeck*, 2004 WI App 11, ¶7, 269 Wis. 2d 204, 674 N.W.2d 665 (2003). However, when this decision is based on a question of law, such as the interpretation of a municipal ordinance, our review is de novo. *See id.*; *A & A Enters. v. City of Milwaukee*, 2008 WI App 43, ¶16, 308 Wis. 2d 479, 747 N.W.2d 751. In such an independent review, we often benefit from the circuit court's analysis. *Zwiefelhofer*, 338 Wis. 2d 488, ¶20. "[W]e apply the same principles used in statutory interpretation." *Milwaukee Dist. Council 48 v. Milwaukee County*, 2019 WI 24, ¶11, 385 Wis. 2d 748, 924 N.W.2d 153.

¶15 Finally, our review of both whether pleadings are sufficient and whether an award of attorney fees is reasonable is conducted under an erroneous exercise of discretion standard. *See Schultz v. Trascher*, 2002 WI App 4, ¶14, 249 Wis. 2d 722, 640 N.W.2d 130 (2001); *Hartman v. Winnebago County*, 216 Wis. 2d 419, 427-28, 574 N.W.2d 222 (1998). Under this standard, we will uphold a circuit court's exercise of discretion "if it is a reasonable conclusion, based upon a consideration of the appropriate law and facts of record." *State v.*

*Salas Gayton*, 2016 WI 58, ¶20, 370 Wis. 2d 264, 882 N.W.2d 459 (citations omitted).

## DISCUSSION

### I.    Wildwood sufficiently raised a due process claim.

¶16    We first address the Village's argument that the circuit court erred in considering Wildwood's procedural due process claim, which, it asserts, did not appear in Wildwood's complaint and was first raised in Wildwood's motion for summary and declaratory judgment.

### A.    Wildwood's complaint provided adequate notice of its procedural due process claim.

¶17    Wisconsin has long been a liberal pleading state.  *See Data Key Partners v. Permira Advisers LLC*, 2014 WI 86, ¶¶37-38, 356 Wis. 2d 665, 849 N.W.2d 693 (citing favorably to the liberal pleading standard set forth in the eponymous *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), decision).  All that is required is that a plaintiff plead a "short and plain statement of the claim, identifying the transaction or occurrence or series of transactions or occurrences out of which the claim arises and showing that the pleader is entitled to relief" together with a "demand for judgment for the relief" sought.  WIS. STAT. § 802.02(1)(a)-(b).  Pleadings are to be liberally "construed as to do substantial justice." Sec. 802.02(6).  Litigation is a serious exercise in the pursuit of truth and justice, not "a game of skill in which one misstep by counsel may be decisive of the outcome."  *Tews v. NHI, LLC,* 2010 WI 137, ¶62, 330 Wis. 2d 389, 793 N.W.2d 860 (citation omitted).

¶18    Wildwood's complaint identified provisions in the Ordinance that it argued were invalid, requested a judicial declaration that the Ordinance was unenforceable in whole or in part, and specifically stated:

> The actions of the Village, *including but not limited to* denying [Wildwood's] request for a legal non-conforming use without explanation or justification, deprived [Wildwood] of property without due process of law, in violation of the Fourteenth Amendment of the United States Constitution.

(Emphasis added).   Thus, it set out Wildwood's due process claim and put the Village on notice that there were multiple grounds for its assertion that the Village had deprived Wildwood of property and its constitutional rights "without due process of law."   This was sufficient, and we affirm the circuit court's discretionary decision to that effect.[7]

### B.    No formal amendment of the complaint was necessary because the Village suffered no prejudice.

¶19    Even if Wildwood's complaint had not sufficiently placed the Village on notice of the due process claim more fully articulated in Wildwood's motion briefing, the Village had a fair and full opportunity to address that issue in both its briefs and during oral argument such that no formal amendment of the initial pleadings was necessary.

---

[7] Although the circuit court's decision on the adequacy of Wildwood's complaint was not explicit in its original decision and order issued in January 2023, it was obviously implicit because after hearing argument on the issue, the court ruled on the merits.   In the amended decision and order issued in June 2023, the court explained its conclusion that a due process violation occurred based on the Village's passing of the Ordinance "under the guise of" a business ordinance, "which the plaintiff raised in [its] complaint when [alleging a] violation of *42 U.S.C. § 1983.*"   Like this court, the circuit court emphasized Wildwood's statement in its complaint that its claim was based on the "actions of the Village including *but not limited to*" the denial of Wildwood's nonconforming use request.

¶20    Circuit courts have considerable discretion to permit amendments to pleadings.  *See* WIS. STAT. § 802.09(2).  They may even informally or sua sponte amend complaints to conform to the evidence, provided the opposing party suffers no prejudice.  *Schultz*, 249 Wis. 2d 722, ¶¶14, 21.  When considering whether to allow a late amendment to a complaint, courts look to "whether the party opposing amendment has been given such notice of the operative facts which form the basis for the claim so as to enable [it] to prepare a defense or response."  *Carl v. Spickler Enters., Ltd.*, 165 Wis. 2d 611, 623, 478 N.W.2d 48 (Ct. App. 1991) (citation omitted).  Amendments are to be granted if such an opportunity has been provided.[8]  *Id.*  Here, the Village conceded that it had a sufficient opportunity to respond to Wildwood's procedural due process argument in response to the circuit court's question about whether the Village had had an adequate opportunity—in its briefs and oral argument—to argue the "whole zoning issue."  After the Village's concession, the court commented that "the Village is clearly aware [of] how this thing progressed through the governmental system" and noted that it looked "to the outside observer … like they were contemplating some change to the zoning related to this."  In further support of its decision to consider the due process claim, the court also noted that the Village had not sought a continuance to reopen discovery.

---

[8] The Village asserts that *Mach v. Allison*, 2003 WI App 11, 259 Wis. 2d 686, 656 N.W.2d 766 (2002), sets forth the "specific criteria" upon which circuit courts are to deliberate when considering whether to permit an amended complaint.  That is correct; however, the *Mach* criteria do not come into play until *after* a motion for summary judgment has been granted. *Tietsworth v. Harley-Davidson, Inc.*, 2007 WI 97, ¶26, 303 Wis. 2d 94, 735 N.W.2d 418; *Mach*, 259 Wis. 2d 686, ¶27.  We decline the implicit request to extend *Mach* criteria to all instances where amendments to complaints are under consideration.

¶21 Wildwood argued the zoning due process issue in its summary judgment brief filed July 15, 2022. On the same day, the Village argued that the Ordinance was not a zoning amendment in its brief supporting its motion for summary judgment; this was its defense to Wildwood's claim that it was entitled to a legal nonconforming use exemption. In fact, in each of its three briefs, the Village included an in-depth discussion of this issue. The Village's concession that it had been able to fully brief and argue the issue of whether the Ordinance was a zoning amendment belies any assertion that it was prejudiced by delayed notice of this claim. It is evident that the Village was not prejudiced because it was able to fully prepare its defenses to the claim. *See **Carl***, 165 Wis. 2d at 623.

¶22 The circuit court did not erroneously exercise its discretion in considering Wildwood's procedural due process claim. The Village received adequate notice of the claim and was not prejudiced such that informal amendment of the complaint, to the extent it was necessary, was warranted.

> **II.** **As a zoning amendment, the Ordinance was passed without following required procedures in violation of Wildwood's due process rights and is thus void and unenforceable.**

¶23 We begin with one of the uncontroverted principles that underlies the foundation of our nation. As far back as the Philadelphia Convention, Alexander Hamilton noted that "the security of Property" is one of the "great [objects] of Gov[ernment]." 1 THE RECORDS OF THE FEDERAL CONVENTION OF 1787, 302 (Max Farrand ed., Yale Univ. Press 1911). At the time of our nation's

11

founding,[9] property was "the guardian of every other right," JAMES W. ELY, JR., THE GUARDIAN OF EVERY OTHER RIGHT: A CONSTITUTIONAL HISTORY OF PROPERTY RIGHTS, 26 (3d ed. 2008), and protection of property was critical to the concept of individual liberty, *see* ARTHUR LEE, AN APPEAL TO THE JUSTICE AND INTERESTS OF THE PEOPLE OF GREAT BRITAIN, IN THE PRESENT DISPUTES WITH AMERICA, 28-29 (4th ed. 1776). "Wisconsin public policy also 'favors the free and unrestricted use of property.'" *Solowicz v. Forward Geneva Nat'l, LLC*, 2010 WI 20, ¶34, 323 Wis. 2d 556, 780 N.W.2d 111 (quoting *Dodge v. Carauna*, 127 Wis. 2d 62, 65, 377 N.W.2d 208 (Ct. App. 1985)).

¶24 There is no doubt that owners of real property have the right to use that property as they see fit as well as the right to include others on or exclude others from that property. *See Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 435-36 (1982) (regarding the right to exclude others from real property). That being said, this use-of-property right is not absolute; states and local governmental units (including villages) may use their police power to

---

[9] The concept of property at the time of our founding is further addressed in Paul J. Larkin Jr.'s law review article, *The Original Understanding of "Property" in the Constitution*, 100 Marq. L. Rev. 1, 26-27 (2016):

> The American Revolution, accordingly, was a rebellion fought to *preserve* the rule of law and the freedoms enjoyed by the Framers' generation as Englishmen, not to *obtain* them.
>
> ….
>
> One of those freedoms was the ability to acquire and enjoy the use of private property. The Framers' generation held that "property" was a "natural right," a right that is antecedent to and exists independently of government. Such a right, in [Lord Edward] Coke's words, was the "*Lex aeterna*, the law of nature ... written with the finger of God in the heart of man."

(Footnotes omitted; final omission in original).

regulate and restrict the use of real property within their boundaries. ***State ex rel. Carter v. Harper***, 182 Wis. 148, 154-55, 196 N.W. 451 (1923). "'Police power' is an inherent authority of state [and local] governments" covering "all matters having a reasonable relation to the protection of the public health, safety, or welfare." ***State v. Cole***, 2003 WI 112, ¶22, 264 Wis. 2d 520, 665 N.W.2d 328 (citations omitted); *see also* WIS. STAT. § 61.34(1) (prescribing police powers for local governments).

### A. Zoning laws are subject to substantive and procedural safeguards.

¶25  "Zoning power is a subset of the police power." ***Zwiefelhofer***, 338 Wis. 2d 488, ¶31. While all "[z]oning ordinances are enacted pursuant to a local government's police power," "all ordinances enacted under the police power are not zoning ordinances." ***Id.***, ¶5 (citations omitted). Both zoning power and police power "serve the same overarching purpose of protecting the health, safety, and welfare of the community." ***Id.***, ¶31. However, "[d]espite the similarity and potential overlap between zoning ordinances and non-zoning police power ordinances, the legislature imposes different procedural requirements on these two forms of ordinances." ***Id.***, ¶6.

¶26  Given the importance of property rights, it is evident why zoning ordinances "are to be construed in favor of the free use of private property." ***Heef Realty & Invs., LLP v. City of Cedarburg Bd. of Appeals***, 2015 WI App 23, ¶7, 361 Wis. 2d 185, 861 N.W.2d 797 (citation omitted). In fact, "[z]oning at first was considered one of the most radical departures from the traditional concepts of private property because it was perceived as prohibiting a citizen from devoting his property to a purpose useful and entirely harmless, in the ordinary sense, in certain districts within a community." ***Zwiefelhofer***, 338 Wis. 2d 488, ¶7 n.8

(quoting 1 Edward H. Ziegler, Jr., *Rathkopf's The Law of Zoning and Planning*, §1.2 (2011)).

¶27 "[Z]oning decisions implicate important private and public interests; they significantly affect individual property ownership rights as well as community interests in the use and enjoyment of land." ***Marris v. City of Cedarburg***, 176 Wis. 2d 14, 25, 498 N.W.2d 842 (1993). Should a local government or municipality[10] decide to prohibit a use that is permitted under its zoning code, that entity is amending its zoning code and must, a priori, follow the procedures for doing so under state and local law. ***Heitman v. City of Mauston Common Council***, 226 Wis. 2d 542, 550-51, 595 N.W.2d 450 (Ct. App. 1999) (citing WIS. STAT. § 62.23(7)(d)2. Precisely because a zoning restriction impairs a property owner's rights, the procedural requirements are heightened. ***Zwiefelhofer***, 338 Wis. 2d 488, ¶7. "[W]hen land use controls prohibit the use of land for particular purposes, they must be accomplished by the substantive and procedural safeguards created by the legislature in the zoning enabling act." ***Heitman***, 226 Wis. 2d at 554.

¶28 One of those heightened requirements under WIS. STAT. § 63.23(7)(d)2 is notice and a public hearing. Our supreme court in ***Oliveira v. City of Milwaukee***, 2001 WI 27, ¶31, 242 Wis. 2d 1, 624 N.W.2d 117, explains:

> The rationale for requiring a WIS. STAT. § 62.23(7)(d)2. notice and hearing when there is a substantial change in the substance of the zoning amendment ensures that the public has the opportunity to express views regarding the zoning amendments. The statutory notice and hearing requirements implicate due

---

[10] Villages have the same zoning powers as cities. WIS. STAT. §§ 61.35, 63.23; *see also* WIS. STAT. § 62.23(7)(am) (outlining the grant of zoning powers to local governments).

14

> process concerns because property rights are affected by changes in the zoning laws. "Notice and hearing provisions are invariably intertwined with due process considerations. The legislature, in enacting sec. 62.23(7)(d), has attempted to protect this right to due process by requiring an adequate notice and hearing before a change in municipal zoning could affect the character of a neighborhood."

(Citation omitted.)

### B. The Ordinance is a zoning ordinance.

¶29 Under the Wisconsin "Right to Rent" law, the legislature has declared that short-term rentals—even those fewer than six consecutive days—are permitted in single family residential districts when the community's general zoning code does not contain time restrictions on occupancy. *See* WIS. STAT. § 66.1014. Within the parameters of the "Right to Rent" law, local governments may regulate rentals within their boundaries. Because there is an impact on property owners' ability to enjoy all of the rights bundled in their fee simple titles, *see Gebhardt v. City of West Allis*, 89 Wis. 2d 103, 108-09, 278 N.W.2d 465 (1979), these local regulations must be fair and reasonable and they must be enacted in accord with the appropriate zoning procedural requirements set forth in WIS. STAT. § 62.23(7)(d).

¶30 There is no straightforward, bright-line rule to determine whether an ordinance is a zoning ordinance. *Zwiefelhofer*, 338 Wis. 2d 488, ¶8. "Nor may a court simply add up the number of similarities a challenged ordinance has to traditional zoning ordinances or the number of differences a challenged ordinance has from traditional zoning ordinances to determine whether a challenged ordinance is a zoning ordinance." *Id.*, ¶9. Our supreme court cautions that the determination is typically done on a case-by-case basis looking to the facts at hand because "[s]ome characteristics, under the circumstances of the case, may be more

significant than others." *Id.* Accordingly, we are to utilize a "functional approach" and consider characteristics traditionally associated with zoning ordinances. *Id.*, ¶8. They include:

> (1) zoning ordinances typically divide a geographic area into multiple zones or districts; (2) within the established districts or zones, certain uses are typically allowed as of right and certain uses are prohibited; (3) zoning ordinances are traditionally aimed at directly controlling where a use takes place as opposed to how it takes place; (4) traditionally classifying uses in general terms, zoning ordinances attempt to comprehensively address all possible uses in the geographic area; (5) zoning ordinances traditionally make a fixed, forward-looking determination regarding what uses will be permitted as opposed to case-by-case determinations; and (6) traditional zoning ordinances allow certain landowners whose land use was legal prior to the adoption of the zoning ordinance to maintain their land use despite its failure to conform to the ordinance.

*State ex rel. Anderson v. Town of Newbold*, 2021 WI 6, ¶40, 395 Wis. 2d 351, 954 N.W.2d 323 (citing *Zwiefelhofer*, 338 Wis. 2d 488, ¶¶36, 38-42; citations to *Zwiefelhofer* omitted above).

¶31 Several of these tilt strongly in favor of concluding that the Ordinance is a zoning ordinance. Although the Ordinance applies throughout the entire Village and does not divide the Village into multiple districts, it makes certain use of the land—namely short-term rentals for periods shorter than six consecutive days—prohibited. *See Zwiefelhofer*, 338 Wis. 2d 488, ¶38 & n.21 (explaining that traditional zoning ordinances often "prohibit some uses in all circumstances"). It directly controls that no short-term rentals will take place in the Village; there is no regulation about *how* short-term rentals take place. *See id.*, ¶39 & n.22 (describing the "where" and "how" dichotomy that often applies, respectively, to zoning ordinances and other regulations). This is a fixed,

forward-looking determination applicable to all properties within the Village and not one made on a case-by-case basis.[11]  *See id.*, ¶41.  Thus, considering the second, third, and fifth ***Anderson*** factors, those factors weigh in favor of determining that the Ordinance is a zoning law.

¶32    The sixth ***Anderson*** factor pertains to land use that was legal before passage of an ordinance that becomes illegal after.  We deem this very significant in this case.  In ***Heef***, we held that the short-term rental of a dwelling in a single-family zoning district is a permitted use of real property under a municipal zoning code when that zoning code has not clearly and unambiguously prohibited such rental.  ***Heef***, 361Wis. 2d 185, ¶¶1, 10-14.  Wildwood's property is zoned "Country Residential District (R-2)."  Prior to the enactment of the Ordinance, short-term rental of Wildwood's property was unquestionably permitted.  When the Ordinance was enacted, it clearly resulted in a change to Wildwood's permitted uses; it took a substantial stick out of Wildwood's bundle.

¶33    This court rejects the Village's assertion that its short-term rental prohibition should be shrugged off as merely "one limit" on real property owners' rights.  It may be "one limit," but it is significant nonetheless, especially to owners

---

[11] The Village asserts that the Ordinance does not violate WIS. STAT. § 66.1014 in prohibiting short-term rentals.  This assertion, however, is not relevant to the question of whether the Ordinance is a zoning ordinance.

(such as Wildwood) who typically rent their properties for periods of fewer than six consecutive days.[12]

¶34 Moreover, the *Anderson* factors are not exclusive. There are several other facts in this case that evidence that the Ordinance is a zoning ordinance. From the very beginning, the village board decided to model its ordinance after the VOL Ordinance regulating short-term rentals—on its face, a zoning ordinance—and repeatedly acknowledged that the Ordinance dealt with land use and its administration should be handled by the personnel responsible for zoning. At its May 2019 meeting, for instance, the board determined that "[t]he duties that are currently assigned in the draft ordinance to the Administrator, should be changed to Planner since this is a land use issue and falls under the scope of the Zoning Administrator." The village planner is under the authority of the Department of Planning and Zoning and is "designated as the zoning administrator and administrative officer for the provisions of [Chapter 111 - Zoning and Shoreland Protection]." SUMMIT, WIS., CODE ch. 111, art. XIV § 111-407(a).

¶35 At the June 2019 meeting of the village board, the "[o]perational items" concerning the Ordinance were assigned to the village planner. The application forms related to short-term rentals were located in the "Planning &

---

[12] We do not give significant weight to the apparent trend in non-Wisconsin jurisdictions finding similar ordinances to be zoning ordinances. *See Kirsch Holding Co. v. Borough of Manasquan*, 281 A.2d 513, 514 n.1 (N.J. 1971); *Landing Dev. Corp. v. City of Myrtle Beach*, 329 S.E.2d 423, 424 (S. C. 1985); *City of Grapevine v. Muns.*, 651 S.W.3d 317, 335-37 (Tex. App. 2021); *Wihbey v. Zoning Bd. of Appeals*, 292 A.3d 21, 29-30 (Conn. App. Ct. 2023); and *Slice of Life, LLC v. Hamilton Twp. Zoning Hearing Bd.*, 207 A.3d 886, 899-900 (Pa. 2019).

Zoning" section of the Village's website.[13]   And, the Village's attorney, while acknowledging that a zoning ordinance would require notice and a public hearing, stated that the Ordinance "was drafted to regulate to the extent you can for regulatory reasons, not for public safety."   He admitted that "[m]ost of the horror situations will not be addressed by this ordinance, those are public safety or nuisance issues and this will not solve the problem....   Those other issues would have to be addressed with a different ordinance."   These additional factors, taken together, further persuade us that this is a zoning ordinance.

¶36   The Village's remaining arguments are unpersuasive.   While the Ordinance's purpose statement,[14] preamble,[15] and its placement in the Businesses Chapter of the Village Code may suggest that its purpose was to regulate short-term rentals out of concern for the health and safety of citizens, these are self-serving statements, and as our supreme court has cautioned, we should

---

[13]   Although they have apparently been removed, presumably after the circuit court held the Ordinance unenforceable, the application forms for a vacation rental license and a tenant permit were located under the "Land, Property and Zoning-related Forms and Applications" heading on the Village's website under "Planning & Zoning."

[14]   Section 6-157(a) of the Ordinance provides:

> *Purpose.* The following vacation rental establishment licensing regulations are created, to ensure that applicable state laws are followed, to protect persons engaged in this practice either as landlord or tenant; to protect against adverse impacts of noise, odor, disturbance, adverse visual impacts, or other nuisances, that this practice could have upon neighboring properties; to preserve property values for the commercial benefit of the village; and also to control the impacts of such operations on municipal services, including snow plowing, garbage collection, sanitation, law enforcement and fire protection.

[15]   Unlike the short-term rental zoning VOL Ordinance which mentions the Zoning Code in its preamble, the Ordinance's preamble states: "Chapter 6 – BUSINESSES a new Article for Vacation Rentals" is being enacted.

carefully scrutinize these facts and "receive with some skepticism post hoc hypotheses about legislative purpose, unsupported by the legislative history." *State ex rel. Grand Bazaar Liquors, Inc. v. City of Milwaukee*, 105 Wis. 2d 203, 210-11, 313 N.W.2d 805 (1982) (citation omitted). Notably, there is no reference in the legislative history to establish that the Ordinance was enacted to address an existing public concern for the Village's residents' public health, safety, or general welfare. To the contrary, the Police Chief noted no recent problems, and the Village's attorney admitted the Ordinance was not designed to address such concerns.

### C. The Village failed to follow proper zoning ordinance procedures.

¶37 There is no factual dispute that the Village failed to follow the procedural steps necessary for enacting a valid zoning amendment. It never provided the proposed ordinance to the Plan Commission, it never published a Class 2 notice pursuant to WIS. STAT. ch. 985, and it never held a public hearing as required by both WIS. STAT. § 62.23(7)(d)1.a. and the Village's own code. *See* SUMMIT, WIS., CODE art. XIII, § 111-387 (enacted by Ordinance No. 31-2015 (Oct. 1, 2015)).

¶38 Accordingly, because the majority of the *Anderson* factors, taken together with the actions—not the self-serving words—of the Village, establish that the Ordinance is a zoning ordinance and because the Village has sidestepped the procedural requirements that accompany zoning ordinances, we affirm the circuit court's grant of summary and declaratory judgment in favor of Wildwood.

### III.     Wildwood is entitled to reasonable attorney fees.

¶39     The Village contends that the circuit court erroneously exercised its discretion by awarding Wildwood attorney fees pursuant to 42 U.S.C. § 1988 because Wildwood only prevailed on one claim and, moreover, that that one claim was not one of the three claims alleged in the complaint but rather was first raised in summary judgment pleadings.  In the alternative, the Village seeks a reduction in the award to reflect Wildwood's partial success.  Wildwood argues that the court found a due process violation and that, under 42 U.S.C. § 1983, it prevailed on its claims such that an award of attorney fees is appropriate.  We agree.

¶40     To be a "prevailing party" under the federal code, a plaintiff must "succeed on any significant issue in litigation which achieves some of the benefit the part[y] sought in bringing suit."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (citation omitted).  A party prevails when the "actual relief on the merits of [the plaintiff's] claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992).

¶41     As explained above, Wildwood asserted a claim for a violation of procedural due process by the Village.  *See Black v. City of Milwaukee*, 2016 WI 47, ¶41, 369 Wis. 2d 272, 882 N.W.2d 333 (listing three types of 42 U.S.C. § 1983 claims).  Success on a procedural due process claim occurs when a plaintiff "demonstrate[s] (1) a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process." *Manistee Apartments, LLC v. City of Chicago*, 844 F.3d 630, 633 (7th Cir. 2016).  We have already concluded that Wildwood's procedural due process rights were violated by the Village when

21

it failed to enact the Ordinance under its zoning ordinance procedures: that constitutes success sufficient for an award of attorney fees.

¶42     That, however, does not end the inquiry.  We must determine the time period and the work for which fees should be awarded.  Wildwood asserts it is entitled to all of its attorney fees from the initiation of the lawsuit through the affidavits in support of its award of fees.  The Village contends that Wildwood had only partial success, warranting a reduction of the award, and that Wildwood is not entitled to the fees it expended in seeking attorney fees.

¶43     Even when there is mixed success on interrelated claims, we consider whether a plaintiff achieved its desired outcome.  *Hensley*, 461 U.S. at 435.  A plaintiff need not succeed on every contention raised to be entitled to attorney fees.  *Id.*, at 439-40.  If a plaintiff has unique and distinct claims and only prevails on one, the time expended on the other claims could warrant a reduction in attorney fees.  *Cook v. Public Storage, Inc.*, 2008 WI App 155, ¶95, 314 Wis. 2d 426, 761 N.W.2d 645.  When the claims are related, however, the time expended on each is too interrelated to divide and "the court 'should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.'"  *Id.* (citation omitted).  It necessarily follows that a "'losing party is not entitled to a reduction in attorney's fees for time spent on unsuccessful claims, if the winning party achieved substantial success and the unsuccessful claims were brought and pursued in good faith' especially where all of the 'claims arise out of a common core of facts.'"  *Rand v. Rand*, 2010 WI App 98, ¶7, 327 Wis. 2d 778, 787 N.W.2d 445 (citation omitted).

¶44     Wildwood articulated that it was seeking declaratory and summary judgment for a violation of its procedural due process rights to have the Ordinance

enacted via the process necessary for a zoning ordinance. Wildwood proceeded to obtain relief for that specific violation. The circuit court granted Wildwood the relief it sought and declared that the Ordinance was a zoning ordinance that was improperly enacted by the Village and was void and unenforceable. Wildwood achieved more than partial success on its claim; it achieved complete success on its main goal.

¶45 We agree that Wildwood did not obtain a nonconforming use exception, but that was an alternate claim—arising out of common facts and highly related in the sense that both claims depended on the legal issue of whether the Ordinance was a zoning ordinance—and was rendered moot by the absolute success on its motion for declaratory and summary judgment. The circuit court, reaching these same conclusions, properly exercised its discretion in its award of fees; this was "a reasonable conclusion, based upon a consideration of the appropriate law and facts of record." *See **Salas Gayton***, 370 Wis. 2d 264, ¶20 (citation omitted).

¶46 The Village also seeks a reduction of the attorney fees for the time expended on preparing the motion for attorney fees. It asserts that approximately 34% of the fees sought were tied to the fee request and its responses.[16]

¶47 This court will "ordinarily defer to a circuit court's determination as to hours awarded." ***Johnson v. Roma II-Waterford LLC***, 2013 WI App 38, ¶25,

---

[16] The Village contends that 65.8 hours (of a total of 225.35 hours) "related exclusively to Wildwood's request for attorney fees" and "26.3 of those hours were attributable to the reply brief in support of the request for attorney's fees." The Village further asserts that an additional 16.45 hours was spent by Wildwood to respond to the Village's two-page letter objection. Thus, the Village complains that 34% of the 241.8 hours is excessive.

346 Wis. 2d 612, 829 N.W.2d 538. "An attorney's hours are subject to the scrutiny of the court and unreasonable hours should not be compensated." ***People Who Care v. Rockford Bd. of Educ.***, 90 F.3d 1307, 1314 (7th Cir. 1996). This is because we "will affirm unless there is a clear showing of [an erroneous exercise] of discretion," ***Totsky v. Riteway Bus Service, Inc.***, 2000 WI 29, ¶46, 233 Wis. 2d 371, 607 N.W.2d 637 (citation omitted), and will "look for reasons to sustain a [circuit] court's discretionary decision," ***Farmers Automobile Insurance Ass'n v. Union Pacific Railway Co.***, 2009 WI 73, ¶32, 319 Wis. 2d 52, 768 N.W.2d 596.

¶48 Under these circumstances, the Village has failed to establish that there is a meritorious basis upon which to overturn the circuit court's award of attorney fees for the lengthy and apparently the rather disputed attempts to request and substantiate the award of attorney fees.

## CONCLUSION

¶49 An individual's "right to maintain control over his [or her] home, and to be free from governmental interference, is a private interest of historic and continuing importance." ***United States v. James Daniel Good Real Prop.***, 510 U.S. 43, 53-54 (1993). The "valuable rights" associated with this interest include "the right of sale, the right of occupancy, the right to unrestricted use and enjoyment, and the right to receive rents." ***Id.***, at 54.

¶50 It is for this reason that municipalities may not pass zoning ordinances under the "guise of the police power" without following the procedural steps designed to protect citizens' rights. *See **Washington ex rel. Seattle Title Trust Co. v. Roberge***, 278 U.S. 116, 121 (1928). Because the Ordinance changes the allowed uses of property and includes multiple indicia of traditional zoning ordinances, the circuit court correctly concluded that it was a zoning ordinance.

And, as the circuit court noted, the Village's passage of the Ordinance sidestepped the proper process to enact a zoning ordinance. We conclude that the Village did violate Wildwood's procedural due process rights.

¶51     We further conclude that an award of attorney fees is appropriate because Wildwood prevailed on its claim and affirm the circuit court's award.

*By the Court.*—Judgment affirmed.

Recommended for publication in the official reports.